## PETTY v. GRISARD.

1. MARRIED WOMEN: *Mortgage for husband's debt.*

A married woman may mortgage her real estate for her husband's debts.

2. ACKNOWLEDGMENT OF DEEDS: *Certificate, when conclusive.*

The maker of a deed may prove that there was no appearance before an officer to acknowledge it, and no acknowledgment in fact, but if he did acknowledge it in some manner the officer's certificate is conclusive of the terms of acknowledgment.

3. MORTGAGE: *Refusal of mortagee to make further advances.*

Grisard obtained from Petty and wife a mortgage on her land and his personal property, for a pre-existing debt of his, and for future supplies, by promising to sell him supplies to make a crop. Afterwards Grisard ascertained that other merchants held a prior mortgage on the personal property and he refused to sell him the supplies until this incumbrance should be discharged. Finally it was agreed that Grisard should release his mortgage on the personal property and the other merchants should furnish the supplies, and this was done without any additional expense or inconvenience to Petty: HELD, that Grisard's refusal to furnish the supplies did not release the mortgage on the land for the old debt.

APPEAL from *Faulkner* Circuit Court, in chancery.

Hon. F. T. VAUGHAN, Circuit Judge.

*P. H. Prince* for Appellants.

The execution of a note for a husband's debts does not bind the separate property of the wife. *35 Ark., 365.*

As Grisard agreed to furnish certain supplies, which were the consideration of the mortgage, and failed and refused so to do, the consideration failed, or rather never existed. He is at fault and should be forced to place her where she was before executing the mortgage. *Reporter, Vol. X, p. 420; Jones on Real Mortg., 3d Ed., Sec. 612.*

The failure to furnish the supplies, as agreed, was a fraud upon Mrs. Petty, which avoided the mortgage. *34 Ark., 63.*

When a married woman mortgages her separate property to secure the debt of her husband, and such mortgage is procured by misrepresentations, she may defend against a suit to foreclose. *Am. Law Reg., O. S. Vol. VIII, p. 477.* The fraud invalidates the mortgage *ab initio. Jones Real Mortg., Vol. I, Sec. 624, 2d Ed; Gross v. McKee, 53 Miss., 536.* Contends that the Alabama case is distinguishable from this, *60 Ala., 288,* and that the Mississippi case enunciates the better doctrine.

*E. .A Bolton* for Appellees.

A married woman may mortgage or sell her separate estate to pay her husband's debts. *34 Ark., 17; 35 Id., 480; Bishop on Married Women, Sec. 604; Jones on Mortg., Vol. I, Sec. 113.*

Under the constitution of 1874 a married woman may dispose of her estate as if sole, and there is no restraint on the incumbrance of a homestead. *36 Ark., 586; Ib., 355.*

As to the acknowledgment made by Mrs. Petty, the certificate of the magistrate is conclusive. *41 Ark., 421.*

The facts in this case fail to show any fraud. It was mutually agreed that Boothe & Wright should furnish the supplies, and appellee released his mortgage on Petty's crop in pursuance of said agreement. It is not shown that Grisard never intended to furnish the supplies, or that he intended to get security for his debt, and then refuse to furnish the supplies, or that he so intended at the time the mortgage was executed. See *60 Ala., 288; Jones on Mortgages, Sec. 624.*

SMITH, J. This was a bill by husband and wife to annul a mortgage executed by them, and also a sale and conveyance of the mortgaged land, pursuant to a power contained therein. But the circuit court dismissed the bill, sustained the mortgage and confirmed the sale made thereunder.

Petty v. Grisard.

To this decree it is objected that the debt which the mortgage was given to secure was the debt of the husband, while the mortgaged property was by statute the separate estate of the wife.

Since the cases of *Collins v. Wassell, 34 Ark., 17*, and *Scott v. Ward, 35 Id., 480*, the law must be considered as settled in this State that a married woman may mortgage her real estate for her husband's debts.

1. MARRIED WOMAN: Mortgage for husband's debts.

It is further objected that the land was Mrs. Petty's homestead. But it is not perceived how this can affect the decision. The mortgage was made in the year 1881. And the constitution and laws then in force imposed no restraints upon the alienation or incumbering of the homestead.

Another objection was that Mrs. Petty never acknowledged before the officer that she had executed the mortgage of her own free will and accord. The certificate of the justice of the peace is in proper form. And it is shown by the testimony of Mrs. Petty herself, as well as by other evidence, that she did appear in person before him in the absence of her husband and make some sort of acknowledgment of this instrument. The case is thus brought within the rule of *Meyer v. Gossett, 38 Ark., 377*, followed in *Donohoe v. Mills, 41 Ark., 421*. That rule is this: While it is competent for the maker of a deed to prove that there was no appearance before an officer to acknowledge its execution and no acknowledgment in fact, yet if he did acknowledge it in some manner, the officer's certificate is conclusive as to the terms of that acknowledgment.

2. ACKNOWLEDGMENT: Certificate of. When conclusive.

But the principal point of contention is the alleged fraud of Grisard in procuring this mortgage security and total failure on his part to perform certain promises by means of which he induced Mrs. Petty to give it. The evidence conduces to prove the following state of facts: In the year 1879 there was an incumbrance upon the land in favor of one Atkinson, amount-

3. MORTGAGE: Promised advances by mortgagee refused.

to $178.   Grisard, at Petty's request, paid this off and took an
absolute deed to himself, which, however, was only intended
for a security.   In 1881 Grisard, who was a merchant, furnished
supplies to Petty upon the security of a mortgage upon the
same land.    Mrs. Petty joined both in the deed and in the
mortgage, · but owing to Grisard's ignorance of the true state
of the title, or the unskillfulness of the draughtsman, these in-
struments only purported to convey Mrs. Petty's possibility of
dower.   As she was the owner of the land in her own right,
she had no right of dower, and the supposed securities were
worthless.    In December, 1881, Petty owed  Grisard $555, and
for this sum he and his wife made their promissory note, paya-
ble November 1, 1882.   To secure payment of the same, as
well as all other indebtedness that they or either of them might
owe Grisard for goods thereafter to be purchased, they mort-
gaged the land, a mule and ·wagon and the crop to be raised
by Petty during the year 1882.    It was  distinctly under-
stood that Grisard was to sell Petty such farm supplies as he
might need during the year, estimated to be of the value of
$350, upon the faith of this mortgage.    And this was no doubt
the. controlling consideration which influenced Mrs. Petty to
pledge her land.   Grisard soon ascertained, however, that there
was a prior incumbrance on the mule and wagon, held by a
firm of merchants, who were. engaged in business in the same
village.   He insisted that Petty should pay off this incum-
brance before he would let him have any supplies.   Finally it
was arranged between the parties that Grisard should release
his mortgage upon the crop; that the holders of the previous
incumbrance upon the mule and wagon should also take a
mortgage upon Petty's crop, and furnish Petty the supplies he
needed.   This arrangement was carried out apparently to the
satisfaction of all concerned.   The merchants, who were sub-
stituted in Grisard's place, sold Petty goods to the amount of
$415.   Grisard furnished Petty no supplies in that year; but

his old debt remaining unpaid at the expiration of the term of credit, he advertised and sold the land.

In, *Gross v. McKee, 53 Miss., 536*, it was adjudged to be fraudulent in a creditor to obtain a security for a pre-existing debt under a promise to make further advances, which promise he had no intention to keep and did not keep. But in *Johnson v· Murphy, 60 Ala., 288*, it was ruled that the breach of such a promise, although it might support an action at law, or a plea of set-off to the extent of the injury actually sustained, was no ground for the cancellation of the mortgage for fraud.

We have no occasion to decide here which of these two apparently conflicting cases announce the better rule. There is no reason to believe that Grisard, when he took the mortgage, did not intend in good faith to perform his agreement with the Pettys, nor that they lost anything by his failure to do so, or incurred additional expense or inconvenience in procuring necessary supplies to enable them to make a crop. We may regard the supplies as having been actually furnished through the instrumentality of Grisard; for he released his mortgage upon the crop only upon condition that the other firm would fulfill his contract in that behalf.

Decree affirmed.