HILL v. YARBOROUGH.

Opinion delivered April 18, 1896.

HOMESTEAD—DEFECTIVE CONVEYANCE—CURATIVE STATUTE.—A mortgage of a homestead, which was invalid under the act of March 18, 1887, because the signature and acknowledgment of the grantor's wife were obtained through fraud, was rendered valid by the act of April 13, 1893, making all conveyances purporting to affect the title to real estate which are defective or ineffectual by reason of the act of 1887, as valid and effectual as though such act had never been passed.

RELINQUISHMENT OF DOWER—EFFECT OF ACKNOWLEDGMENT.—A mortgage upon a homestead accepted as security for an antecedent debt of the husband, in consideration of which the time is extended for a definite period, is valid to convey the wife's dower, although the wife was induced to execute it by the misrepresentations of the officer who took her acknowledgment that the mortgage did not cover the homestead, where the mortgagee had no notice thereof.

Appeal from Searcy Circuit Court in Chancery.

B. B. HUDGINS, Judge.

*Rose, Hemingway & Rose*, for appellants.

1. The rule laid down in *Meyer* v. *Gossett*, 38 Ark. 377, governs this case. It was re-affirmed in *Donahoe* v. *Mills*, 41 Ark. 421 and 45 *id.* 117. See 1 Devlin on

Deeds, sec. 530. Appellants were *bona fide* purchasers.
They gave further time of payment while the debtor
was solvent. 1 Jones, Mortg., sec. 459; Thomas on
Mortg., sec. 482; 55 Iowa, 132; 77 Ala. 500; 63 Ind. 576;
32 N. W. 243; 71 Iowa, 132; 55 Miss. 348; 63 Ala. 561;
85 N. Y. 226; 36 Hun, 565; 54 Iowa, 14.

2. The testimony of the justice was not admiss-
ible to impeach his certificate. 18 Md. 305; 35 Miss, 83;
53 *id.* 321.

*W. F. Pace* and *Dan W. Jones & McCain*, for
appellees.

1. The chancellor found that the wife was illiter-
ate, and that her signature was obtained by fraud.
The evidence sustains this finding. Where there is
fraud in the deed itself, it is void. 38 Ark. 377; 37
*id.* 148.

2. Appellants are not *bona fide* purchasers for
value and without notice. The mortgage was given for
an *antecedent debt*. It is true it is held that, under the
law merchant, one who takes negotiable paper as collat-
eral security for a pre-existing debt is a *bona fide* holder
for value. But the court refused to extend the rule to
a mortgage. 102 U. S. 14; 120 *id.* 556. An extension
of time is not sufficient to constitute a *bona fide* pur-
chaser for value, within the equity rule. 102 U. S. 14,
and cases cited. The remark in 49 Ark. 214 is *obiter
dictum*, as the mortgagee in that case advanced a large
sum on faith of the mortgage. The exact point has not
been decided in this state; but see 51 Ark. 59; 34 *id.* 85;
31 *id.* 258; 58 *id.* 252; Herman on Ex., sec. 328; 2 Freem.
Ex., sec. 345; 2 Freeman, Judg. (4 Ed.), sec. 366*a;* 66 N.
Y. 162; 83 Pa. St. 372; 30 Am. Dec. 182; 18 *id.* 577; 12 *id.*
136; 6 Minn. 402; 27 Tex. 593; 33 *id.* 768; 46 Am. Dec.
527; 4 Paige, Ch. 215; 1 Dill. 201.

3. If the mortgagees neglected to see the wife, and trusted to the husband or justice to get her signature, he was, as to this, the mortgagees' agent, and they are affected by his misconduct. 2 Wall. 24. As between the parties to an instrument, there can be no estoppel against pleading fraud by one who has been guilty of no negligence or misconduct. Bigelow, Estop., 286, 288, 519.

4. The husband signed the mortgage only on condition that his wife sign it. He is not bound, unless his wife is. It was void as to her, and this releases him. 48 Ark. 426.

*Rose, Hemingway & Rose*, in reply.

1. 49 Ark. 214, settles the point that an extension of time for a definite period constitutes the creditor a *bona fide* purchaser.

2. The cases cited by appellee refer to execution sales and mortgages where there was no extension of time.

3. The fact that the mortgage covered the homestead is immaterial, under the curative act. Sand. & H. Dig., sec. 743; 58 Ark. 117; 60 *id.* 269.

WOOD, J. This suit was brought by Hill, Fontaine & Co. against Yarborough and wife, to foreclose a mortgage which, it is alleged, was executed by them April 22, 1890, to secure a note of even date for $1,390, due December 1, 1890. The answer set up fraud in the execution of the mortgage, in that Mrs. Yarborough was illiterate, and that the justice of the peace taking the acknowledgement represented to her that the mortgage did not cover the homestead, but conveyed a different tract. The court rendered a decree setting aside the mortgage, and Hill, Fontaine & Co. appealed.

1. There was proof to justify the finding that the signature and acknowledgment of Mrs. Yarborough to

the mortgage were obtained through a misapprehension of the facts, superinduced by the misrepresentations of the justice taking the acknowledgement. The mortgage was in proper form for conveying the homestead and dower. It was shown to have been executed by Yarborough himself, to secure a pre-existing debt then due, upon the understanding that time for payment should be extended to a definite day.

We cannot agree with counsel that Yarborough signed the mortgage "only on condition that his wife would sign it." The proof by Yarborough himself shows the contrary. He says that he signed the mortgage at the request of the attorneys of Hill, Fontaine & Co., who were about to sue him upon the debt, and that he did not know that the justice had misrepresented the facts to his wife until after she had signed. True, he also said that he had told them he did not know whether his wife would sign or not; that they could go down to the farm and see her, with the understanding that, if she would sign the mortgage, it would be all right, and, if not, it would be of no account, and they would have to bring suit; but this latter statement only goes to show that Yarborough knew and was expressing what would be the effect of his wife's failure to sign the mortgage, and not that he had signed only upon condition that she would sign. It appears that Yarborough at this time had property over and above his exemptions, which Hill, Fontaine & Co. could have subjected to the payment of their debt. The justice testified that Yarborough, sent him down to take the acknowledgment of his wife. The only conclusion justified by the proof is that Yarborough executed the mortgage to procure an extension of time for the payment of his debt, and to avoid an impending law suit.

When defective conveyance of homestead cured.

Since the signature and acknowledgement of the wife were obtained through the misrepresentation of the justice as to the material facts, this would render the mortgage void as to the husband, under the act of 1887, making every conveyance of a homestead by a married man, except for certain purposes, of no validity, "unless the wife joins in the execution of such instrument and acknowledges same." But the sweeping provisions of the curative act of April 13, 1893, made the mortgage as "valid and effectual as though the act of 1887," *supra*, "had never been passed." For said act (1893) provides that "all deeds, conveyances, instruments of writing affecting or purporting to affect the title to the real estate, which have been executed since the 18th day of March, 1887, and which are defective or ineffectual by reason of section one (1) of an act entitled 'An act to render more effectual the constitutional exemptions of homesteads, approved March 18, 1887,' be and the same, and the record thereof, are hereby declared as valid and effectual as though said act had never been passed." If the act of 1887 *had never been passed*, the mortgage in controversy would have conveyed the homestead. The legislature, by the act of 1893, dispensed with the prerequisites for the alienation of the homestead which they had prescribed by the act of 1887, as to all conveyances which had been executed between the passage of said act and the act of 1893, where the rights of no innocent party had intervened.

As was held by this court in *Sidway* v. *Lawson*, 58 Ark. 117: "The legislature never undertook to create any interest or estate by the act, but to prescribe the manner in which instruments affecting the homestead of a married man should be executed and acknowledged; at the same time recognizing the homestead as the husband's, and not the wife's, nor as the joint property of husband and wife." *Bank of Harrison* v. *Gibson,*

60 Ark. 269. The curative act of 1893 is broad enough in terms to cure all instruments which are ineffectual because of the failure of the wife to join the husband in the execution of same, or where she has failed to acknowledge same, as well as those where she has joined in the execution, and has acknowledged the instrument, but has done so in a defective manner.

2. The mortgage also in form was properly exe- Effect of acknowledgment procured by fraud. cuted and properly acknowledged for the relinquishment of dower. Is Mrs. Yarborough bound by it? It appears that the mortgagees were ignorant of the fact that the signature and acknowledgment of Mrs. Yarborough were procured by the misrepresentations of the justice. There was nothing to charge them with notice. The mortgage was sent to them duly executed and acknowledged, and they readily accepted same as security for the debt, and extended the time of payment for a definite period. When the debt became due, plaintiffs had the right to sue, and, by doing so then, could have enforced the payment of their claim. Since that time, Yarborough's condition financially has changed, as it was shown by his deposition in this case on the trial that he was worth only five or six hundred dollars outside of the farm included in the mortgage. Upon the faith of this mortgage then, and at the time of its execution, appellants gave up their right to sue and collect their debt. It may not be technically accurate to speak of the mortgagees as *bona fide* purchasers for value, as against the mortgagor, Mrs. Yarborough, both being the immediate parties to the instrument; and yet the above facts certainly entitle them, as against her, to all the rights of an innocent purchaser. Under the proof, if fraud was perpetrated upon Mrs. Yarborough, it was done by the justice of the peace who was sent by her husband to take her acknowledgment. The mortgagees were not parties to the fraud, and had no notice thereof, and they

were purchasers for value, as shown *supra.* Jones, Mort., sec. 459–61, and authorities cited. *Fargason* v. *Edrington*, 49 Ark. 207, and authorities cited.

But, if the rights of Mrs. Yarborough are to be determined upon the doctrine of estoppel, the result will be the same, for it will be found difficult to distinguish this case in principle from *Donahue* v. *Mills*, 41 Ark. 422, and *Meyer* v. *Gossett*, 38 Ark. 377; and the doctrine there announced as to acknowledgments of married women has become a rule of property in this state. · See also *Petty* v. *Grisard*, 45 Ark. 117; *Holt* v. *Moore*, 37 Ark. 145.

The decree of the court below is therefore reversed, and cause remanded, with directions to enter a decree of foreclosure, in accord with this opinion, and for further proceedings.