## W. A. Livingston et al. v. Ferdinand Koenig.

Decided February 9, 1899.

1. **Contract of Sale of Land by Executor Enforced—Partition Held Sufficient.**

A purchaser of part of a tract of land which belonged to the community estate of the husband and wife, under a contract with the husband's executor which required them to proceed to have the land partitioned according to the wife's will, can not refuse a title dependent on such partition in the absence of anything to show unfairness, illegality, or irregularity therein, although the distributees under the wife's will would not be bound by the partition of the land between the two estates unless the same was fairly made and their substantial rights were protected.

2. **Executor's Power to Partition Community Estate.**

The executors of the husband's will who are empowered to partition the community land after the husband's death, may, for the purpose of making such partitions, partition the interests of the respective estates in the land, if they act fairly, although such power is not expressly conferred upon them.

**3. Specific Performance.**

Specific performance of an executory contract for the sale of one hundred acres of land specifically described, reserving a road of fifteen feet, will not be denied because of the indefinite character of the reservation, where the deed tendered is for the whole 100 acres without exception.

APPEAL from Fayette. Tried below before Hon. H. TEICHMULLER.

*Moore & Duncan,* for appellants.

*Brown & Lane,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—This action was brought January 9, 1897, by appellants, as independent executors of the will of John L. Smith, deceased, to recover of appellee the purchase money of 100 acres of land which he had contracted in writing to buy from them under the following contract:

"*State of Texas, County of Fayette.*—Know all men by these presents, that the memorandum of agreement between John T. Duncan and W. A. Livingston, as independent executors of the will of John L. Smith, deceased, parties of the first part, and Ferdinand Koenig, party of the second part, is made as follows:

"First. The said executors will proceed at once to have partition of Mrs. Elmena Smith's estate, according to her last will, between her children, and when so done, according to the terms of said will of Mrs. Smith, said executors will sell to party of second part 100 acres out of the Craven league; said 100 acres beginning 148⅔ varas from the bridge on Williams Creek, on the Weimar and La Grange Middle Road, thence running with said league line north sufficient to embrace said 100 acres, by running east of the opposite line of said league, thence with said east line same distance as first given, then due west to place of beginning.

"The beginning corner is the corner of 200 acres surveyed for Miss Eliza Smith, as by map of said executors; the road of fifteen feet is to be reserved.

"Second. The said Koenig agrees to pay in cash $22 per acre for said 100 acres; the said Koenig is to take possession of the said 100 acres at once."

Mrs. Elmena Smith had been the wife of John L. Smith and with him had owned a community estate, and had died in 1889, leaving a will by which she devised to her husband a life estate in all her property, "to enjoy the same during his natural life, without interference from any source, and with unrestricted discretionary power to sell and dispose of same;" directed that no proceedings be had concerning her estate in any court except the probate of the will and the filing of an inventory by her husband; exempted her husband from giving bond as survivor of the community, or in any other capacity; bequeathed to her children, in equal

shares, the "remainder of her estate after the termination of the life estate;" provided, however, that any advancements "that are or may hereafter be made to them" are to be deducted from their shares. The fifth section is as follows:

"Sec. 5. In order to more effectually protect my estate against any proceedings in any court, and to guard even against litigation for the purpose of partitioning the same, I hereby direct and provide that upon the termination of the aforesaid life estate my estate shall be partitioned and distributed among my children in pursuance to the direction herein contained, by two arbitrators and an umpire, whose decisions and acts, without reference to any court, shall be finally and absolutely binding upon any parties interested."

The sixth section names the persons who are to make partition.

John L. Smith, before his wife's death, had made to some of his children advancements in money and land out of the community estate, and, after her death, conveyed to his daughter, Mrs. Livingston, some land in La Grange, and to another daughter, Miss Eliza Smith, 200 acres, the homestead, reserving the right to use it during his life. Both pieces of property had belonged to the community estate, and were conveyed without valuable consideration. He also, after his wife's death, sold parts of the land to pay debts, so that at his death there was left a tract of 282 acres of the community land undisposed of and undivided, and of this the 100 acres which appellee wished to buy was a part. John L. Smith also left a will, which was probated in January, 1896, by which he appointed Livingston and Duncan his independent executors, giving them full power to manage his estate out of court, and to sell any and all property belonging thereto, and to partition it among his devisees. The will provided for payment of debts, and devised one-half of his property to his daughter, Miss Eliza Smith, and the other half to two other daughters, Mrs. Livingston and Mrs. Friedenhaus, omitting any provision for his four other children, for reasons stated. The will also provided that the property in La Grange which had been conveyed to Mrs. Livingston should not be charged up to her in the division of his estate.

This was the condition of the estate when the contract sued on was made. Within a day or two of its execution the parties caused a survey of the 100 acres to be made and its corners to be marked upon the ground without objection on either side.

Thereafter the persons appointed by Mrs. Smith's will to make partition of her estate, with the acquiescence of the executors of John L. Smith's will and of Mrs. Livingston and Mrs. Friedenhaus, devisees under it, made a division of the 382 acres tract into parts of equal value, designating as the property of the estate of John L. Smith 191 acres, including the 100 acres in question. They then proceeded to partition the estate of Mrs. Smith among her children, including therein the 191 acres set apart to such estate and the value of one-half of all advancements made to such children by John L. Smith. Among the property thus included was the value of one-half of the 200 acres deeded by Smith

to his daughter, Eliza, and of one-half of the property in La Grange conveyed by him to Mrs. Livingston. The values thus added together were divided into seven equal parts, to ascertain the share of each child, and it was found that the value of the half of the land which Miss Eliza Smith had received from her father exceeded the share to which she would otherwise have been entitled in her mother's estate by $826.31. They therefore allowed to her no part of the remaining land. They deducted from the share of each of the other children one-half of the sum, or one-half of the value of the property which had been received by him or her from the community estate, thus ascertaining the balance in value to which each was entitled, and distributed among them, in proportion to such balances, the 191 acres set apart to Mrs. Smith's estate. The partitioners after having made this partition executed a deed showing their action as stated, and undertaking to vest titles in Miss Smith to the 200 acres, in Mrs. Livingston to the La Grange property, and in Mrs. Livingston and Mrs. Friedenhaus, as devisees under the will of John L. Smith, title to the 191 acres set apart to his estate. All of these parties have acquiesced in the partition, as have other children of Mrs. Smith, whose interests amount to seven-eighths of the 382 acres. Those owning the other one-eighth interest are dissatisfied, but have taken no steps to disturb the partition.

After this partition appellants, on the 14th day of November, 1896, executed and tendered to appellee a deed to the 100 acres, and demanded payment of the purchase money, which was refused.

On the 17th day of November, 1896, Mrs. Livingston and Mrs. Friedenhaus and their husbands also joined the executors in a deed to appellee for the land, but this was never called to his attention until the trial.

Upon the facts stated, the court below refused to render judgment for appellants, holding that "the attempted partition had not been effectually accomplished so as to conclude the heirs and legatees under the two wills. It is unnecessary to indicate their rights, whatever they may be, for they are not parties to this suit, and no judgment would affect them. To decide that the partition by the arbitrators does not conclude them is sufficient for this case." The reason given by the court is that "the arbitrators could not possibly derive power from the will of Elmena Smith to ascertain and determine what of this undivided property was part of the Elmena Smith estate. Their partition, however, is based upon their own judgment as to the validity of the acts done by J. L. Smith, while enjoying the life estate, of sales, deeds of gift, and advancements made by him. Their partition, therefore, is not conclusive as to the heirs and legatees of either one of the wills."

We do not think the proposition laid down by the court, that the fact that the partition does not conclude the heirs, without reference to any question as to their rights remaining in the property, is sufficient to defeat the action, is sound. The contract did not stipulate for a partition that should conclude the heirs. Nothing but a judgment of a court of

competent jurisdiction, having all the parties before it, could do that. The contract not only does not require such a judgment, but makes provision for a different proceeding as prescribed by Mrs. Smith's will. When such a partition is had in accordance with the will, the condition precedent imposed by the parties is fulfilled, though the devisees be not so concluded that no inquiry can be had in the courts into the correctness of such partition. The contract is not the one ordinarily presented in suits for specific performance, in which the vendor agrees, upon payment of the price, to convey a title free from all uncertainty and doubt.

The parties knew that the estate owned an undivided interest which the executors were empowered to sell, but it was desired to separate such interest from that of Mrs. Smith's children, in order that a specific tract might be conveyed. They knew, also, that Mrs. Smith's will provided a means by which her estate could be divided among her children, and that the executors had power, under the will of John Smith, to divide his estate among his devisees. They therefore provided that the executors, who could represent one estate, should cause the appointees of Mrs. Smith to divide her estate, and evidently regarded the partition to be thus obtained as sufficient for their purposes. If the procedure thus contemplated was substantially followed in accordance with Mrs. Smith's will, the condition precedent was performed and the event upon which the trade was to be consummated had happened. We do not mean to say that appellee would be required by a court of equity to fulfill his contract if he could make it appear that, by reason of unfairness, or illegality or irregularity in the proceedings, his title was likely to fail. On the contrary, we are of the opinion that in such a case equity would refuse to decree specific performance, although the letter of the contract had been complied with by plaintiffs. We mean only to hold, that the mere fact that all parties are not concluded by the partition, without reference to any right any of them may have to recover any part of the land contracted for, will not defeat the action. To so hold would be in effect to say that they made a contract which was nugatory from the first; for they stipulated for the kind of partition that was had, and not for one to be conducted in the courts.

That Mrs. Smith's appointees could not derive power from her will to bind John L. Smith's estate, by their ascertainment that particular property belonged to her estate, is true; and it is true that such appointees could not take away the title of her children to property really belonging to her estate by their determination that it did not so belong. But it does not follow that they could not make a valid division of property which did belong to the estate. Nor does it follow that they and the executors representing John Smith's estate, as a preliminary to the exercise of power given to them to divide, among those entitled, the property of the estates for which they were respectively empowered to act, could not separate the share of the one estate from that of the other. It seems to us that the testator and testatrix must have

contemplated the necessity of their doing just that thing. Their estates consisted of undivided interests in the community, and Mrs. Smith so disposed of her interest as to prevent partition before her husband's death. Both of them in making their wills, therefore, knew that those whom they empowered to make division, without action in any court, would have to deal with property thus situated and could not divide among their devisees property belonging to their respective estates without a partition between them. Since the appointees of Mrs. Smith's will had power to divide her estate among her children, and the executors had power to divide their testator's property among his devisees, it seems to follow that the two together could perform the mere act of setting off to each estate the share belonging to it. They could not conclude the distributees by an unfair division, made without regard to their real, substantial rights, but could, in our opinion, exercise such power as was involved in merely dividing the property between the two estates, as the basis for further division among the distributees of each. As we have seen, the executors participated and acquiesced in this partition, and have tendered to appellee a deed for the land in question which would estop them from ever questioning it to his prejudice. The objection urged on acount of lack of power in the partitioners to make any partition which would be valid must therefore fail.

It remains to determine whether or not the facts show that in the partition made there was such error with respect to the rights of any of the parties as will so endanger the title which appellee will obtain as to afford ground for a refusal of the decree sought by appellants.

It was held by the court below that the will of Mrs. Smith gave to her husband no power to give or advance to his children property belonging to her estate; and it would result that the half of the 200 acres conveyed to Miss Smith remained a part of the community estate, and should have been divided by the partitioners, instead of being left undisturbed in her possession. If this were true, it would seem that the other children could secure out of such half enough to compensate them for the $826.31 which, on this assumption, Miss Smith would appear to have gotten in excess of her interest in her mother's estate. As to the property deeded to Mrs. Livingston, no question can arise, because half of it was charged to her as an advancement, and was less than her interest in her mother's estate.

But we are not prepared to hold that the will of Mrs. Smith did not empower her husband to make those deeds. The language is, "to enjoy the same [that is, the property] during his natural life, and with unrestricted discretionary power to sell and dispose of same." The pronoun "the same" evidently refers in each instance to the same antecedent, the property, and the power is given over that and not merely over the life estate. A grant of power to dispose of the latter would be wholly useless and senseless. The power is "discretionary and unrestricted" not only to sell, but to dispose of the property. This embraces the power to give it away unless it is limited by other parts of the will.

The only other part which could be claimed to have that effect is the third clause, wherein the testatrix bequeaths to her children the remainder of her estate after the termination of the life estate. This does not impair the force of the language used in conferring the power, because it is only what is to remain of the property, that is, such as has not been taken out of her estate by the exercise of the power that is bequeathed to the children. Again, this same clause requires that the devisees be charged with advancements "that are or may hereafter be made," contemplating that further advancements may be made before the division takes place. The court below construed this to refer to advancements which the testatrix herself might thereafter make before her death. But the advancements referred to as already made were made by her husband, and any afterwards to be made out of the property would necessarily have to be made by him, as only he could convey title to the property. We think it much more reasonable to hold that she referred not only to advancements made by her husband previously, but to such as he might thereafter make, and intended that his power should continue unrestricted after her death, as it was before.

We are unable to discover in the evidence any just reason to apprehend that the title which appellee will obtain will be endangered through defects and errors in the partition, or that it is substantially different from that which he expected to get when he entered into the contract.

It is urged by appellee that, by reason of the indefinite character of the stipulation concerning the road, the contract is so uncertain that the court should not decree specific performance. It is true that the court can not make any provision for the road, but it does not follow that the whole contract must fail. The road is "reserved," that is, taken out of what is to be conveyed, the 100 acres. This is the meaning of the language employed. The deed tendered is for the whole of the 100 acres without exception. Appellee does not show that he is or can be prejudiced by this, since he can use the land conveyed as he chooses.

The judgment will be reversed and judgment will be here rendered in favor of appellants for $2200, with 6 per cent interest from the date of the deed, November 14, 1896, and costs and for a foreclosure of lien upon the 100 acres of land.

*Reversed and rendered.*

Writ of error refused.