ALLENDER VS EVANS-SMITH DRUG COMPANY.

Opinion delivered October 4. 1901.

1. *Agreement to Execute Mortgage—Consideration.*

An agreement to execute a mortgage at a certain date, to se-cure a pre-existing indebtedness, without other consideration, is a good and valid agreement between the parties.

2. *Oral Agreement to Execute Mortgage—Statute of Frauds.*

Where an oral agreement to execute a mortgage to secure an existing debt is made to secure a postponement of the debt, and the mortgage is not executed on the specified date, such an agreement, although oral, is not within the statute of frauds, but creates a lien on the property which a court of equity will enforce.

3. *Oral Agreement—Certainty—Specific Performance.*

An oral agreement to pay a debt or execute a mortgage to se-cure its payment upon a certain date in the future, is definite and certain, and on the failure of the promising party to perform either of his promises, specific performance of same will not be denied because of its indefiniteness nor because in the alternative.

Appeal from the United States court for the Southern district.

HOSEA TOWNSEND, Judge.

Action by the Evans-Smith Drug Company against U. S. Allender. Judgment for plaintiff. Defendant ap-. peals. Affirmed.

On the 4th day of May, 1898, the appellee filed in the

United States court for the Southern district of the Indian Territory, at Pauls Valley, its suit in equity against the appellant, setting up that the appellant was justly indebted to it in the sum of $431 for goods, wares, and merchandise sold and delivered to him at his special instance and request; that said indebtedness was long past due, and appellant failed and refused to pay the same, or any part thereof; that its account had been in the hands of J. B. Thompson, attorney, at Pauls Valley, for collection, since 1898; that said J. B. Thompson presented said account to appellant for settlement at various times, and appellant agreed with said Thompson, as attorney for appellee, for a valuable and adequate consideration, to execute a mortgage upon certain property, consisting of the interest of appellant in block 3d of Grant's New addition to the town of Pauls Valley, and block 8 of Grant's First addition to the town of Pauls Valley, together with the improvements thereon situate; that in consideration of said agreement to execute said mortgage appellee extended the time for the payment of said indebtedness, and agreed that the amount should be divided up into payments, to be evidenced by promissory notes of appellant, to become due at various times between the date of said agreement and the latter part of the fall of 1898, the dates of the respective payments and the amounts thereof to be made to suit the convenience of the appellant; that in pursuance of said agreement the said Thompson drew up said mortgage upon said property, and appellant agreed to sign and execute the same on or about the 13th day of May, 1898; that on account of said agreement said Thompson relaxed his efforts to collect said indebtedness, or enforce the payment thereof by legal process; that, after appellant had agreed to execute said mortgage, and before his refusal to execute the same, he made an assignment for the benefit of creditors of his property subject to execution, preferring confidential creditors for an amount far in excess of the

amount conveyed in said deed of assignment, thereby placing all his property beyond the reach of appellee; that under and by virtue of said agreement to execute a mortgage upon said property, plaintiff had acquired a lien upon said property agreed to be mortgaged; that the defendant was wholly insolvent, and in possession of said property, and using and occupying the same, and appropriating to his own use and benefit the rents and revenues thereof; that the property be subjected to said lien, and the proceeds applied to the payment of plaintiff's claim, and pending the final disposition of said cause that a receiver be appointed to take charge of the premises. Defendant filed his answer, admitting the indebtedness, pleading that he had been adjudged a bankrupt on the 14th day of May, 1898, and asked that, so far as a personal judgment was sought against him, the proceedings be stayed. The remainder of the answer consisted of a general denial of the allegations of plaintiff's complaint, and an allegation that the plaintiff sought to charge the defendant upon an oral contract for the sale of lands, tenenents, and hereditaments without any agreement in writing signed by the defendant, and that the same was insufficient under the statute of frauds. The cause was referred to the master, and on the 7th day of July 1898, he made his report in said cause, sustaining every allegation of plaintiff's complaint. The cause was again referred to the master, and he filed his second report herein on the 3d day of July, 1899. In this report the master finds that about the 1st of May, 1898, the defendant agreed to give plaintiff a mortgage upon his residence to secure the balance due on said account; that it was agreed that the time of payment should be extended, and made payable during the Fall; that J. B. Thompson, attorney for plaintiff, should draw up a mortgage and notes, leaving the dates and amount blank, to be filled out and signed by the defendant; that he did so draw up the mortgage and notes, and went to the defendant about the last of the week prior to the time

he agreed to sign the same, and defendant promised that he would, on next Thursday or Friday, pay off the said account, or execute the mortgage agreed upon; that plaintiff, by his attorney, waited until the time suggested by the defendant, and upon the following Thursday or Friday defendant made an assignment of his property, preferring other creditors for more than the value of the property assigned; that on Friday plaintiff's attorney called on defendant, and requested him to settle said account, or give a mortgage according to his agreement, which he refused to do. The master further found that the defendant was insolvent, and that since the institution of the suit he had taken the benefit of the bankruptcy law; also that the defendant represented his indebtedness to be $500 when he obtained the extension on the agreement to give the mortgage, when in fact he owed $2,000. The facts as found by the master are not disputed. Exceptions were filed to the master's report on the 13th day of July, 1899. Said exceptions were overruled, and the master's report in all things confirmed, and judgment entered fixing the amount of the debt, decreeing a lien in favor of plaintiff upon the property and directing the sale, and an application of the proceeds to the satisfaction of plaintiff's judgment.

*Albert Rennie*, for appellant.

*W. A. Ledbetter*, *S. T. Bledsoe*, and *J. B. Thompson*, for appellee.

CLAYTON, J. In this case there are nine specifications of error filed with the brief. Without setting them out in full, we deem it sufficient to say that they present for our consideration but three questions of law. It is contended First, that the agreement to execute the mortgage was without consideration, because it was to be executed to secure the payment of a pre-existing indebtedness without other or further consideration; second, that the agreement,

being oral, and for the sale of an interest in and concerning lands, tenements, and hereditaments, and without part performance on the part of the appellee, it was void by virtue of the statute of frauds; and, third, that the agreement is so uncertain and indefinite that the court cannot decree specific performance.

As to the first proposition, it is the law that a mortgage executed to secure a pre-existing indebtedness, without other consideration, is good and valid as between the parties to the instrument. It is only when the rights of third parties intervene that under such circumstances the mortgagee is held not to be a purchaser for value in good faith. Jones, Mortg. (5th Ed.) § 460, and authorities cited; Jones, Chat. Mortg. § 81; Bank vs Whitney, 103 U. S. 99, 26 L. Ed. 443; Hill vs Yarbrough (Ark.) 35 S. W. 433. And therefore, as the controversy here is between the parties to the agreement only, the contention of the appellant cannot be successfully maintained. Besides, in this case there was, by the agreement, an extension of time for payment of the debt which has always been held to be a sufficient consideration to support a mortgage.

As to the second proposition, we are of the opinion that there was a part performance of the agreement. The contract, in substance, was that the defendant should have the payment of his debt to the plaintiff, then due, postponed to a day certain, at which time he would pay it; and, if he should then fail to pay, he would execute a mortgage upon his residence to secure it. This contract was wholly performed upon the part of the plaintiff. He had done all he promised to do. The time for payment of the debt had been extended. Plaintiff had made no effort to collect it. His forbearance was complete, and the defendant had derived all of the advantages possible to be obtained, or which could have been legally in contemplation, under the agreement. It is true that the extension of the time for payment

was short, but not so short but that the defendant found in the interim ample time to concoc and put into exscution a scheme by wnich, through the instrumentality of an assignment for the benefit of his creditors, with preferences, the plaintiff is wholly cut off from the collection of this debt, o r any part of it, unless the courts will enforce this agreement· We think the agreement, although oral, is not, in equity' within the operation of the statute of frauds; and, in accordance with the equitable maxim that "that which is agreed to be done will be treated as having been done," the plaintiff is entitled to have the judgment below, fixing a lien upon the premises, and ordering them sold to satisfy the debt af firmed. Beach, in his work entitled "Modern Law of Contracts" (volume 1, § 360), after discussing generally liens arising from agreements to give mortgages, says: "It is not necessary that such transactions or agreements as to lands shall be in writing in order to take them out of the operation of the statute of frauds, for two reasons: First, because they are completely executed by at least one of the parties, and no longer executory; and, second, because the statute, in its own terms, does not affect the powers which courts of equity have always exercised to compel the performance of such agreements." Mr. Jones, in his work on Liens (volume 1, § 77), uses the following language: "An agreement on sufficient consideration to give a mortgage on specific property creates a lien upon such property, which takes precedence of the claims of promisor's general creditors and claims of subsequent purchasers and incumbrancers with notice." The same author, in his work on Mortgages (section 163), says: "An agreement to give a mortgage or security on certain property, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat that as done which, by agreement, is to be done. This doctrine has been asserted frequently, both in England and this country." Pom, Eq. Jur. 380; Adams, Eq. Jur. 83; Story, Eq. Jur. 123; Hicks vs

Turck (Mich.) 40 N. W. 339; McCarty vs Brackenridge (Tex. Civ. App.) 20 S. W. 997; Irvine vs Armstrong (Minn.) 17 N. W. 343; King vs Williams (Ark.) 50 S. W. 695.

The third contention,—that the agreement is too uncertain and indefinite to be enforced, and that it is in the alternative,—we think, is not well founded. The agreement that on a certain day in the future the defendant would pay the debt, or, in default thereof, would execute a mortgage on certain specific premises is certainly definite and certain, and is to be taken as an entire contract; and upon the defendant's refusal to pay the debt, as he had agreed to, the plaintiff was remitted to his remedy for the total noncompliance with the contract. In Ice Co. vs. Meader, 18 C. C. A. 451, 72 Fed. 115, it was so held, the court saying: "It is insisted, however, that the contract of the parties in this case was in the alternative,—that the purchaser had the right either to execute the mortgage in pursuance of the terms of the original contract of May 17th, or that he might secure the debt by personal indorsement satisfactory to the vendor. It seems a sufficient reply to this to point out the fact that the defendant company made no offer of personal indorsement, satisfactory to the plaintiff or otherwise, and the plaintiff was therefore remitted to such remedy for the total noncompliance with the contract as the doctrine above stated will afford him. With this view he brings his bill, not strictly to enforce the specific performance of the contract, but rather to have the court declare its legal effect, considered in connection with the further fact that the plaintiff has performed all that he agreed to do, and defendant, while receiving and accepting its machine, has not only not paid the debt, but even refused to give evidence of the debt which it had promised." Finding no error, the judgment of the court below is affirmed.

GILL and RAYMOND, JJ., concur.