WILSON v. BEATY.    (No. 6201.)

(Court of Civil Appeals of Texas. San Antonio. April 9, 1919. Rehearing Denied April 30, 1919.)

1. SPECIFIC PERFORMANCE ⊚⟾1—NATURE AND PURPOSE—EQUITABLE RELIEF.

The remedy of specific performance is purely an equitable proceeding entirely different from any kind of relief known to and granted by the law, and belongs exclusively to the jurisdiction of courts of equity.

2. EVIDENCE ⊚⟾448—SPECIFIC PERFORMANCE ⊚⟾28(1), 51 — WRITTEN CONTRACTS — CERTAINTY AS TO TERMS—EXTRINSIC EVIDENCE.

Where a contract in writing is certain in its terms, fair and just in its provisions, and capable of being enforced with fairness to both parties, equity will enforce it by specific performance, and the certainty of the contract may be aided by proof of extrinsic facts.

3. SPECIFIC PERFORMANCE ⊚⟾28(1) — CONTRACTS—CERTAINTY—INTENTION.

A contract is certain and definite in its terms if it leaves no reasonable doubt as to what the parties intended and no reasonable doubt of the specific thing equity is called upon to have performed.

4. SPECIFIC PERFORMANCE ⊚⟾28(1) — CONTRACTS—CONSTRUCTION—CERTAINTY.

The certainty required in a contract which renders it subject to an action for specific performance is a reasonable certainty, and the equitable rule would not require a strained and unreasonable construction of the contract solely for the purpose of defeating the remedy and destroying the right.

---

⊚⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. SPECIFIC PERFORMANCE ⊂⟹30—CERTAINTY
OF TIME OF PAYMENT—PRIVILEGE TO PAY
BEFORE TIME.

'Although a contract for sale of real estate
could not be specifically enforced where there is
no certainty as to the time of payments of
purchase money, yet, where the right to pay
before a fixed time is a mere privilege granted
to purchaser, the fact that she might refuse to
exercise her privilege does not render the con-
tract uncertain.

6. SPECIFIC PERFORMANCE ⊂⟹30—CERTAINTY
AS TO DATE AND PAYMENT OF NOTES TO BE
GIVEN.

Because the exact number of notes to be
executed by purchaser under a contract and
the exact sum of each and the exact date on
which it was executed and became due were not
named in the contract does not prevent specific
performance in favor of vendor.

7. BILLS AND NOTES ⊂⟹125—SPECIFIC PER-
FORMANCE ⊂⟹30 — CONTRACT — INTEREST —
DATE OF' BEGINNING—CERTAINTY.

A contract providing for execution of notes
by purchaser at the time the property was con-
veyed by warranty deed to her is not uncertain
as to the date when interest begins, since upon
a promise to pay with interest at a specified
rate interest runs from the date of the instru-
ment, and not of maturity, as a matter of law.

8. SPECIFIC PERFORMANCE ⊂⟹131—CONTRACT
OF CONVEYANCE — PAYMENTS — NOTES—OB-
JECTION AS TO NUMBER.

A decree in suit for specific performance
requiring defendant purchaser to execute one
promissory note instead of an indefinite number
was not more onerous than the terms of the sale
contract in which she was given the privilege
of paying off all or any part of the note at any
time within the limit of five years which would
compell her to pay no more than if she had
given a number of notes, and she was not prej-
udiced thereby, especially where she refused to
exercise her option to have several notes.

9. VENDOR AND PURCHASER ⊂⟹148 — CON-
TRACT TO CONVEY—TENDER OF DEED.

Where a deed was not only tendered by
vendor to purchaser, but was accepted and
held by her, after her repudiation of the con-
tract, another tender was not required; the
repudiation being a waiver of any right to a
tender, especially a second tender of a deed.

10. APPEAL AND ERROR ⊂⟹1171(1)—REVERSAL
—AMOUNT OF RECOVERY—CALCULATION OF
PARTIAL PAYMENTS.

Where a purchaser did not avail herself of
the contract privilege of naming the number of
notes and times of payment, she will not be
heard to complain, on appeal in a suit for spe-
cific performance, that the decree ordered her
to execute one note, and ask the appellate court
to enter into a calculation to ascertain whether
she would be compelled to pay a trifle more on
one note than on several she might have made,
since the court should not be called upon to
solve problems in partial payments based on
supposititious premises.

Appeal from District Court, Travis Coun-
ty; George Calhoun, Judge.

Suit by W. B. Smith against Annie N.
Beaty, in which defendant filed a cross-ac-
tion against Lula B. Wilson. Judgment for
plaintiff in the main action, and for Annie
N. Beaty in the cross-action, and Lula B.
Wilson appeals. Affirmed.

N. A. Stedman, of Austin, for appellant.
White, Cartledge & Wilcox and D. H. Doom,
all of Austin, for appellee.

FLY, C. J. This is a suit instituted by
W. B. Smith against Annie N. Beaty to re-
cover the sum of $6,000, interest and attor-
ney's fees, as evidenced by two promissory
notes, respectively, for $3,500 and $2,500, and
to foreclose a certain deed of trust on cer-
tain land in Travis county. Annie N. Beaty,
appellee herein, filed a cross-action against
Lula B. Wilson, appellant herein, in which
she sought to obtain specific performance
of a certain contract, as follows:

"The State of Texas, County of Travis.

"This contract of bargain and sale made and
entered into this the 5th day of December, A.
D. 1916, by and between Mrs. P. C. Beaty, a
feme sole, of Austin, Travis county, Tex., par-
ty of the first part, and Mrs. Edwin Wilson, a
feme sole, also of Austin, Travis county, Tex.,
party of the second part, witnesseth:

"(1) That the said party of the first part has
this day bargained and sold and by these pres-.
ents does hereby bargain, sell, and obligate her-
self to convey or cause to be conveyed by a
general warranty deed unto the said party of
the second part all and singular the following
described property, to wit: That certain tract
of land which the said party of the first part
now owns and which is situated in South Aus-
tin, Travis county, Tex., consisting of twelve
acres, more or less, and having a mineral well
thereon, and being the same property against
which the lien held by W. B. Smith now exists.

"(2) The consideration paid and to be paid
to party of the first part by said party of the
second part for the property above described
is the sum of fifteen thousand ($15,000.00) dol-
lars, to be paid as follows: Party of the sec-
ond part agrees and obligates herself to as-
sume the indebtedness against the said property
for which the above-mentioned W. B. Smith
holds a lien. For the difference between said
indebtedness and the agreed sum of fifteen thou-
sand ($15,000.00) dollars, party of the second
part agrees and obligates herself to execute ven-
dor's lien notes on the said property conveyed
to her by the said party of the first part.

"(3) Party of the first part agrees and ob-
ligates herself to furnish a full and complete
certified abstract of title to the above-described
property for examination, and if the title to the
property is approved, or if the abstract shows
no fault which cannot be removed, then party
of the first part shall at once execute the gen-
eral warranty deed above mentioned, and party
of the second part agrees to buy said property
on the terms above set out. But should the ab-

⊂⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

stract fail to show a good title, or such faults as cannot be removed within a reasonable length of time, then this contract shall not be binding on either party, but shall be null and void.

"(4) Party of the second part agrees to execute the above-mentioned promissory notes when the property is conveyed to her by the general warranty deed above mentioned; said notes to bear seven per cent. (7%) interest per annum, to be paid on or before the 15th day of December, of each year. The above notes are also to so read that they may be paid at any time not later than five years from the date of their execution, at the option of the party of the second part.

"This contract is executed in duplicate, and one copy delivered to each of said parties, this the day and year first above written.

"[Signed]    Mrs. Lula B. Wilson.
"Mrs. Annie N. Beaty."

Appellee alleged that at the time of the execution of the contract she owned the same tract of land on which foreclosure of the deed of trust was sought, and the same described in the contract, which appellant obligated herself to purchase and agreed to pay off the indebtedness to W. B. Smith and execute promissory notes for the difference between said debt and $15,000, the price she agreed to pay for the property, that appellee had furnished a full and complete abstract of title to the property, which showed a good and merchantable title, and was approved by the attorney of appellant, and appellee executed a warranty deed conveying the property to appellant as agreed in the contract and delivered the same to appellant, which she still has in her possession, but she refused to pay off the notes due Smith, and refused to execute the note as she had bound herself to do. Appellee prayed for specific performance of the contract.

Appellant answered by general demurrer and general denial, and specially pleaded that she signed the contract with the understanding that appellee should sign and return the same to appellant within ten days, and, if not so returned, it should not be binding on appellant, and appellee did not sign and return the instrument as agreed; that, although appellee placed in possession of appellant a deed purporting to convey the land, yet it was not legally delivered because not accepted by appellant.

The court overruled the general demurrer, and upon a hearing of the cause rendered judgment in favor of Smith as against appellee for $9,831.53, and foreclosed the lien on the land described in the petition, and also adjudged that the contract between appellant and appellee be specifically performed, and appellee recover of appellant the sum of $9,831.53; that the title to the land be divested out of appellee and vested in appellant, subject to the lien in favor of Smith and lien of appellee; that appellee recover of appellant the difference between the debt due Smith and $15,000, and, as an evidence of such indebtedness, that appellant execute to appellee a note for $6,726 as of date December 21, 1916, with 7 per cent. interest to be secured by a vendor's lien on the property. This appeal was perfected by appellant as against appellee.

We find the facts to be as alleged in the cross-action of appellee and as found by the court in his findings of fact. The allegations as to an agreement for the contract to be signed and returned to appellant in ten days are not sustained by the facts. The deed executed by appellee was delivered to appellant by appellee, and was retained by appellant with the statement that she desired to submit it to her attorney, and she made no objection to the difference between Smith's debt and the $15,000 being evidenced by four notes, and made no suggestion as to the number of notes desired by her. Appellee offered to change the notes to suit any wish of appellant. Appellant never returned the deed, and made no suggestion as to how the notes should be executed.

[1, 2] The remedy of specific performance is one well established in courts of equity, and, being purely an equitable proceeding entirely different from any kind of relief known to and granted by the law, belongs exclusively to the jurisdiction of courts of equity. The remedy of specific performance is given to compel a party violating his primary duty to do the very acts which his duty and the other party's corresponding primary right required of him, such as the performance of a contract according to its terms and requirements. The foundation of the action is that, by compelling the parties to a contract to do the very things they have agreed to do, more complete and perfect justice is attained than by giving damages for a breach of the contract. The end in view should be primarily the protection of the plaintiff, but the equities of the defendant must also be protected; the supreme object being the attainment of exact and complete justice between the parties. Pomeroy, Eq. Jur. § 1401. Where a contract is in writing, is certain in its terms, is fair and just in its provisions and capable of being enforced with fairness to both parties, it is a matter for enforcement in a court of equity. The essential elements that a contract must possess in order to be specifically enforced have been thus enumerated in a note to section 1403, Pomeroy's Eq. Jur.:

"The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and, finally, it must be capable of specific execution through a decree of the court."

Absolute and positive certainty as to the terms of the contract is not required, but there must be reasonable certainty as to the subject-matter, the stipulations, the purposes, and the circumstances under which the contract was made. The certainty of the contract may be aided by proof of such extrinsic facts as may lawfully be used for such purpose. Stanton v. Miller, 58 N. Y. 192.

[3, 4] The contract is certain and definite in its terms if it leaves no reasonable doubt as to what the parties intended and no reasonable doubt of the specific thing equity is called upon to have performed. Pom. Eq. Jur. 764; Ward v. Stuart, 62 Tex. 335; Munk v. Weidner, 9 Tex. Civ. App. 491, 29 S. W. 409. There can be no reasonable doubt as to what was intended by the simple contract made by the parties, and, as hereinbefore stated, the option to execute several notes for the deferred payments on the land cannot by a refusal to exercise such option be used as a weapon with which to destroy or obscure the contract. The provisions of the contract herein copied cannot be subjected to the charge of being uncertain unless it be that section or paragraph which provides for the execution of a note or notes and fixes the time limit for the payment of the amounts evidenced by the note or notes at five years. The amount to be secured by the notes is absolutely certain, and it is clear that the privilege of paying the debt in as many different payments at as many dates during the time limit of five years is granted to appellant. Because this privilege was granted to appellant and she failed and refused to exercise it, it is contended that the contract is so uncertain and indefinite that the equitable remedy of specific performance cannot be invoked. There can be no doubt of the certainty of the amount of the debt, nor of the final date at which all of it would become due, and we are not cognizant of any rule of equity nor have we had any decision cited that would place it in the power of a defendant to destroy the right of specific performance by a failure to exercise a privilege provided for her benefit and not to injure the other contracting party. It is clear from the terms of the contract that appellee bound herself to convey to appellant certain land, giving a merchantable title thereto; that, in consideration of the conveyance, appellant bound herself to pay appellee the sum of $15,000, a certain portion thereof to be paid in extinguishment of two certain promissory notes held by W. B. Smith, and the balance to be evidenced by notes all of which should be due and payable in five years or at times within the five years as desired by appellant. The amounts were fixed and absolutely certain, and it was absolutely certain that the whole of it should be paid within the five-year period. The certainty required in a contract which renders it subject to an action

for specific performance is a reasonable certainty, and the equitable rule would not require a strained and unreasonable construction of the contract solely for the purpose of defeating the remedy and destroying the right. By refusing to execute the notes, or designate a time at which she would make payments, the whole of the deferred payment became due five years after the date that the deed was delivered to appellant; in fact, it is specially provided in the contract that the notes were "to so read that they may be paid at any time not later than five years from the date of their execution at the option of party of the second part." Appellant could have demanded any reasonable number of payments evidenced by so many notes, but, if she refused to name such number, such action or inaction would not prevent a specific performance of the contract which would require her to pay the interest as specified and pay the whole of the debt at the end of five years from the time the deed was placed in her hands, namely, December 21, 1916. This was exactly what the judgment did, in addition to permitting appellant to pay off the whole or any part of the debt at any time during the five-year period that appellant might desire. The judgment provided for the enforcement of the contract in the spirit as well as in the letter thereof.

[5] It can be fully admitted that a contract for the sale of real estate could not be specifically enforced when there is no certainty as to the time of payments of the purchase money, as has been held by different courts. Luzadher v. Richmond, 128 Ind. 344, 27 N. E. 736; Gates v. Gamble, 53 Mich. 181, 18 N. W. 631; Shumway v. Kitzman, 28 S. D. 577, 134 N. W. 325; Zimmerman v. Rhoads, 226 Pa. 174, 75 Atl. 207. But in this case the time of payment is absolute and certain, namely, five years from tender of the deed to appellant. The right to pay before that time is a mere privilege granted to appellant, and the fact that she might refuse to exercise her privilege could not render the contract uncertain, no more than a note payable on or before a certain date would be uncertain. None of the authorities cited by appellant militate against that proposition.

The case of Stanton v. Miller, 58 N. Y. 192, cited by appellant does not cover or meet the facts of this case. In that case Mrs. Miller, in consideration of care and support, agreed to place a deed in escrow conveying a certain house and lot, to take effect after her death, and it was held, because the maker of the deed made the deposit in escrow with the express condition that she could at any time recall it and take possession of it, that the contract was destroyed. No court would hold such a contract certain and definite, dependent for its existence upon the whim of a very old woman.

In the case of Huff v. Shepard, 58 Mo. 242,

the debt was to be paid upon terms to be afterwards agreed upon by the parties. Of course, the matter of payment depending on a future agreement was uncertain and indefinite; for there might never be an agreement, and a court of equity could not compel such agreement. In the case now under consideration the contract as to time of payment was certain and definite, and not open or subject to any future agreement or negotiation, as was the case in decisions referred to in section 2294, Elliott on Contracts.

The Texas cases, Taylor v. Ashley, 15 Tex. 50, Holman v. Criswell, 15 Tex. 394, and Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930, are not applicable to the facts of this case. In the first a parol agreement for sale of land was sought to be enforced, and the general and unquestioned principle was stated that, in order to obtain specific performance, the contract must be established to a certainty. The second case cited is without applicability to any points arising in this case, and the third case cited is not found in the volume of reports to which reference is made. We find, however, the case of Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930, which contains but one point, and that as to the construction of a deed. The case was not one of specific performance.

We have seen no case directly in point, but in the case of McCarty v. May, 74 S. W. 804, this court held that a contract to convey 50 acres, to be selected by the vendee, out of a tract of land owned by the vendor, was definite and certain enough to form the basis for specific performance. So in the case of Schneider v. Hildenbrand, 14 Tex. Civ. App. 34, 36 S. W. 784, a lease contract stipulated that upon its expiration the lessor should convey the land to the lessee, if he so desired, and if the parties could not agree on the price, it should be determined by arbitrators. The parties failed to agree, and the lessor's administrator refused to name an arbitrator, and the court held that the provision as to arbitration was not essential to the validity of the contract, and that it could be disregarded and specific performance decreed.

The construction placed by the trial court, and also by this court, on the contract as to the privilege being given by the contract to appellant to make payments as she desired within the five years, is the one placed on it by the parties, and appellant did not refuse to perform the contract because of such provision or on account of four notes being presented to her to sign when the deed was delivered to her, because she testified that she had decided to disregard her contract even before her attorney had informed her that the title was all right. That was done before the deed was tendered, and the request made that she sign notes. The certainty or uncertainty of the contract was not troubling her. She simply decided that she had tired of her contract and would breach it. She knew what the consideration was, and the matter of uncertainty never was sprung until it was desired to defeat the suit of appellee.

[6] No authority has been given for the contention that, because the exact number of notes that were to be executed by appellant, the exact sum of each and the exact date on which it was executed and became due, were not named in the contract, specific performance cannot be enforced, but, on the other hand, such a proposition has been condemned in the case of Ross v. Purse, 17 Colo. 24, 28 Pac. 473. In that case it was held:

"The statement of the consideration in the instrument before us is challenged upon the ground that the kind of well to be dug, and the particular spot on lots 8 and 9 where it is to be located, are not designated. This objection is hardly equal in dignity or force to the one just disposed of. With reference to the consideration, we observe parenthetically, in passing, that greater liberality is recognized than in connection with the other elements of these contracts. The writing is sufficient if a way be clearly pointed out for determining the consideration, even though the precise character or amount thereof be left unexpressed. It was not necessary to designate the specific object for which the well was to be dug, or the kind of material to be employed in its construction. The failure to state whether the water was to be used for domestic purposes purely, or for stock-raising, or for irrigation, could not be a matter of such vital importance as to defeat the action; and a court of equity would certainly not refuse to decree specific performance simply because the depth of the well and the character of the material to be used in timbering or walling are not specified. The contract would be construed as calling for a well so constructed as to be suitable for the usual and ordinary purposes of such an improvement in that locality. * * * The well specified in the instrument before us was to be dug upon lots 8 and 9 of the same block and addition. This is definite enough as to location. It being for the use of Purse, and upon premises of which he was or would be the owner, the clear intent was that it should be placed upon whatever part of the tract described as lots 8 and 9 Purse designated."

That opinion is not only appropriate and fitted to the facts of this case, but it seems reasonable and full of common sense and justice, which should be decisive in every case. The consideration in that case was not expressed with the degree of certainty that it is in this case; for here it is clear and explicit, and not open to attack.

[7] The contract provides for the execution of the notes by appellant at the time the property was conveyed by warranty deed to her, and it is too clear for argument or controversy that interest was to begin at that time. Smith v. Goodlett, 92 Tenn. 230, 21 S. W. 106; Miller v. Cavanaugh (Ky.) 35 S. W. 920:

"Upon a promise to pay 'with interest' at a specified rate, interest runs from the date of the instrument, and not date of maturity." Daniel, Neg. Instr. § 1458.

There could be no doubt as to when the interest would begin to run, for the law fixes it beyond cavil or dispute.

[8] Requiring appellant to execute one promissory note, instead of an indefinite number, was not more onerous than the terms of the contract; for she is given the privilege of paying off all or any part of the note at any time she might desire within the time limit of five years. She will be compelled to pay no more than if she had executed 10, 15, or 20 notes. She has failed to show that she has been prejudiced in any of her rights by being compelled to execute a single note, especially when she rendered that action necessary by a refusal to exercise her option to have several notes. Livingston v. Koenig, 20 Tex. Civ. App. 398, 50 S. W. 463.

[9] The deed was not only tendered by appellee to appellant, but was accepted and held by her, and after her repudiation of the contract another tender was not required. She had, by her repudiation of the contract, waived any right to a tender, especially for the second time, of the deed.

There has been no claim that the contract was unjust, or that it was procured through fraud, misrepresentation, or mistake, but it is merely a plain case of a refusal to perform a plain, just, and reasonable contract, and to prevent its performance by technicalities and objections not justified by the terms of the contract or upheld or countenanced by law. In the case of Allender v. Evans-Smith Drug Co., 3 Ind. T. 628, 64 S. W. 558, it was held by the Court of Appeals of the Indian Territory that—

An action of specific performance could be maintained when "the agreement that on a certain day in the future the defendant would pay the debt, or, in default thereof, would execute a mortgage on certain specific premises, is certainly definite and certain, and is to be taken as an entire contract; and upon the defendant's refusal to pay the debt, as he had agreed to, the plaintiff was remitted to his remedy for the total noncompliance with the contract."

[10] This court cannot entertain the proposition that appellant might have concluded to divide the principal into such parts as to provide for a payment every few months during the five-year period, and enter into a calculation to ascertain whether she would be compelled to pay a trifle more on one note for the whole amount of the debt than on a number of notes for small amounts. Such insignificant matters should not be permitted to destroy an action for specific performance, and no court should be called upon to solve problems as to partial payments, based on supposititious premises, having no foundation in the facts. The decree protects all the rights of appellant. The privilege as to naming the number of notes and times of payment of the debt was a reasonable one, to be exercised in a reasonable manner, and not for the purpose of embarrassing or harassing the payee by dividing the debt into insignificant sums, due at multifarious times. It was a reasonable privilege of which appellant did not avail herself, and her suggestions and hypotheses as to what she might have done are not worthy of great consideration.

The appellant quotes at some length from a case styled Davis v. Epoch Corporation, 155 N. Y. 599,[1] which we have been unable to discover in the court's copy of that volume of New York Reports, which probably states the law correctly, but it does not fit the facts of this case, and only states general rules as to specific performance recognized by every appellate court.

There is no merit in any of the assignments of error, and the judgment is affirmed.

[1] The reference intended was evidently 155 N. Y. Supp. 599, also reported in 91 Misc. Rep. 631.—[Editor.]