Headnotes 1 to 11:   Municipal Corporations: 1, 28 Cyc. 1578;   2 and
3, 28 Cyc. 1579 (1926 Anno);   4, 28 Cyc. 141;   5, 28 Cyc. 159 (1926
Anno);   6 and 8, 28 Cyc. 1579 (1926 Anno);   7, 28 Cyc. 282;   9 and 11,
28 Cyc. 1578;   10, 28 Cyc. (1926 Anno).

---

## THE STATE ex rel. KANSAS CITY v. JOHN T. SMITH, Comptroller.

### In Banc, February 28, '1924.

1. **CHARTER AMENDMENT:** Insufficient Notice of Election.   On the grounds announced in State ex rel. Callaghan v. Maitland, 296 Mo. 338, that the publication of the notice of the election to vote on proposed Amendment Number 1 to the charter of Kansas City, adopted September 28, 1921, was insufficient, Amendment Number 2, advertised in the same manner and voted upon at the same time, is held to be void.

2. ————: Resolution of Water Commission: Recital in Ordinance. But notwithstanding both said amendments were void and the water commission attempted to be created by said first amendment was an illegal body, a recital in a subsequent ordinance of said resolution, in which the commission stated its reasons for ordering a waterworks bond issue and an election to vote thereon, was not void, nor was the ordinance in which said resolution was incorporated void, for the reason that the charter nowhere requires the common council to enact an ordinance giving its reasons for ordering waterworks improvements or for issuing bonds to pay for them.

3. **BOND ISSUE:** To Construct New Waterworks or Improvements: Charter Limitation.   A charter provision that the common council may, by ordinance, submit to the qualified voters a proposition that the city issue bonds, the proceeds to be applied "to the making of extensions, enlargements, improvements or betterments of the waterworks" is sufficiently comprehensive to authorize the council by ordinance to submit a proposition to issue bonds "for the acquisition by purchase, construction or otherwise, of waterworks, and of extensions, enlargement, replacement, improvements and betterments of the waterworks, and the payment for land and right of way and easements acquired by purchase or condemnation, or both, within or without the limits of the city, and within or without the limits of the State of Missouri, for waterworks, and

State ex rel. Kansas City v. Smith.

for other purposes necessary for the water supply of the city." Said ordinance recital does not specifically call for a "new waterworks," and it must be read in connection with and in the light of the purpose the council had in view when it enacted the ordinance, and in the light of the fact that the city then had an extensive system of waterworks and needed only to enlarge it to meet the needs of a growing city. Nor is it important whether the words of the ordinance were borrowed from a resolution of an illegal water commission submitted to it, or prepared by the council itself, for by `adopting them the council made them its own.

4. ——: **Based on Illegal Charter Provision: Valid, Nevertheless.** The fact that the city in authorizing the issuance of waterworks bonds acted under and by virtue of void charter amendments, is immaterial where all the ordinances enacted pertaining to the bond issue were consistent with and authorized by other valid charter provisions.

5. ——: **Interest: Provision for Payment.** Where the void amendment to the charter provided that the interest on the bonds issued should be paid out of revenue derived from the waterworks; provision for paying the interest on the bonds is made by an ordinance expressly providing for the levy and collection of an annual tax sufficient to pay interest on the bonds as it accrues and the principal of the bonds as they mature.

6. ——: **Rate of Interest.** Notwithstanding the void charter amendment provided that the waterworks bonds should bear interest not to exceed six per cent, and the council acted under said void amendment in enacting its ordinances, if the existing valid charter provided that the rate of interest should not exceed five per cent, and the valid ordinance submitted declared the rate of interest should not exceed six per cent, and after its adoption the council enacted another ordinance declaring that the rate of interest should be four and one-half per cent, the rate of interest was brought by the last ordinance within the valid charter limits.

7. ——: **Double Proposition: In Language of Charter.** Where the valid charter provided that "the making of extensions, enlargements, improvements and betterments of the waterworks and the payment for land and the right-of-way acquired by purchase or condemnation, or both, within or without the limits of the city, and within or without the limits of the State, for waterworks, or any one or more of said objects, shall be deemed one particular purpose," a proposition submitted to the legal voters in the language of such charter provision did not contain two or more propositions.

*Mandamus.*

ALTERNATIVE WRIT MADE PERMANENT.

*John B. Pew* and *George Kingsley* for petitioner.

*Walsh & Aylward, James P. Aylward, I. N. Watson, Wash Adams, A. R. McClanahan* and *O. H. Dean* for respondent.

WOODSON, C. J.—This suit is an original proceeding instituted in this court by the petitioner against the respondent, asking for a writ of mandamus to compel him, John T. Smith, the Comptroller of Kansas City, Missouri, to prepare, issue and sell an issue of bonds amounting to one hundred thousand dollars, which he has declined to do, although required to do so by an ordinance duly enacted by the Common Council of said city.

The following stipulation was made and entered into by and between the parties:

"It is hereby stipulated and agreed, by and between the parties to the above cause and B. W. Welch, plaintiff in a taxpayers' injunction suit filed in the Circuit Court of Jackson County, Missouri, affecting the validity and sale of the waterworks bonds, 4th issue, as follows:

"In the pleadings of the parties to this cause, there shall be presented to the Supreme Court herein, in addition to other matters, the Amendments Nos. 1 and 2 to the Charter of Kansas City, Missouri, submitted to the voters of said city November 22, 1921, together with all ordinances and publications of notices and Mayor Cowgill's Proclamation of September 28, 1921, upon which said election was based and held.

"Also resolution of water commission, adopted January 11, 1922, reciting that eleven-million-dollar bond issue is required; Ordinance No. 41964, passed by the Common Council of Kansas City, Missouri, approved by the Mayor; also Ordinance No. 41965, adopted by the Common Council of Kansas City, Missouri, and approved by the Mayor; also Mayor's Proclamation of February 28, 1922, and all proceedings by ordinance or resolution of the Common Council relating to the bond election of April 4, 1922, including all ordinances, publication of notices of

election, proclamation of the Mayor, and all the proceedings by ordinance or resolution of the Common Council relating to said bond election, upon which said election was based and held; ordinances declaring results of election; ordinances directing Comptroller to sell one hundred thousand dollars of the waterworks bonds, 4th issue.

"It is further agreed between the parties to this stipulation that said B. W. Welch shall be permitted, by counsel, to file a brief herein and to argue said cause, if the Supreme Court allows the cause to be argued orally by the parties.

"It is further agreed by said B. W. Welch, representing taxpayers of Kansas City, Missouri, that said cause shall be heard and determined at the earliest possible date satisfactory to the Supreme Court; that this stipulation is subject to a stipulation heretofore filed by the parties to said cause, and that nothing herein contained shall delay in anywise the hearing and determination of said cause."

On September 28, 1921, there was duly enacted and approved an ordinance of Kansas City, Missouri, No. 41236, which is set out in full in respondent's return. By said ordinance there was submitted to the qualified voters of said city two amendments to the charter of said city, known as Amendment No. 1 and Amendment No. 2, and providing for a special election to vote on said amendments to be held November 22, 1921.

The proposed Charter Amendment No. 1 sought to repeal Article XI of the charter which pertains to the fire and water departments and enacted two new articles to be known as Articles XI and XIA, Article XI pertaining to the establishment of a water commission and its functions, and article XIA pertaining to the establishment of a fire department and board of fire commissioners and its functions. Proposed Amendment No. 2 sought to repeal Section 31 of Article XVIII of the charter pertaining to the issuing of bonds by the city and to enact a new section in lieu thereof relating to the same subject known as Section 31 of Article XVIII.

In State ex rel. Callaghan v. Maitland, 296 Mo. 338, it was held by this court that Amendment No. 1 is invalid. One of the grounds for so holding was that the publication of the notice of the election to vote on said amendment was insufficient. Amendment No. 2 was advertised in the same way and voted upon at the same time, and for the same reasons must be held void, and of no effect.

On February 27, 1922, the Common Council of Kansas City enacted an ordinance, No. 41964, which, after reciting the provisions of a resolution of the "water commission" of Kansas City stating that in its judgment a bond issue of $11,000,000 was required for waterworks, provided that there should be submitted to the qualified voters of the city a proposal to borrow money and issue its general negotiable bonds in the sum of $11,000,000 for the purpose set out in a proposal, which is in the following form:

"PROPOSAL.

"For the acquisition by purchase, construction or otherwise, of waterworks, and of extensions, enlargements, replacements, improvements and betterments of the waterworks, and the payment for land and right of way and easements acquired by purchase or condemnation or both, within or without the limits of the city, and within or without the limits of the State of Missouri, for waterworks, and for other purposes necessary for the water supply of the city.

"Eleven million dollars
"($11,000,000.00)"

The ordinance further provided that said bonds should bear interest at a rate not exceeding six per cent per annum, payable semi-annually, and should be in such sum, issued, dated and sold in such manner, at such time or times and in one or more issues as might thereafter be duly provided. The ordinance also provided that the city should before or at the time of issuing such bonds provide for the collection of an annual tax sufficient to pay the interest on the bonds as it falls due and also to con-

stitute a sinking fund for the payment of the principal at maturity.

On February 27, 1922, the Common Council of Kansas City enacted an ordinance, No. 41965, which called an election to be held on April 4, 1922, to submit the proposal above set out to the voters. Notice of this election was duly published as required by law and all of the requirements of the law relating to the election were complied with. The proposal submitted carried at the election by more than the required number of votes.

On June 5, 1922, the Common Council duly enacted an ordinance, No. 42761, which declared the result of the election, and which prescribed substantially the form and title of the bonds, and provided that negotiable bonds of the city authorized by the proposal should be issued in the amount of $11,000,000, to be called "waterworks bonds, fourth issue;" that the interest on the bonds should be at a rate to be fixed by ordinance not exceeding that prescribed by law. It was further provided that an annual tax should be levied and collected each year sufficient to pay the interest on the bonds as it falls due. Finally it was provided in the ordinance that the Comptroller was authorized and directed to cause the form of said bonds to be duly prepared as the same should be ordered sold by ordinance.

On or about May 18, 1923, $2,500,000 of said bonds were issued, sold and delivered by the city and are outstanding.

On October 2, 1923, the Common Council enacted an ordinance, No. 46389, which directed the City Comptroller to prepare and sell $100,000 of waterworks bonds, fourth issue. It was further provided in the ordinance that the bonds should bear interest at the rate of four and one-half per cent per annum, payable semi-annually.

Thereafter the Mayor of Kansas City directed John T. Smith, Comptroller, respondent herein, to proceed to sell and have prepared said $100,000 of said bonds. Respondent refused and still refuses to sell or prepare said bonds,

For several years prior to 1907 and ever since that time there has been owned and operated by Kansas City a system of waterworks for the purpose of supplying the city and its inhabitants with water, the source of which is the Missouri River. This system embraces, among other parts, the following waterworks: Intake, purification works and pumping station located in Quindaro, Kansas; flow lines therefrom to Turkey Creek pumping station in Kansas City, Missouri; Turkey Creek pumping station with pumps and equipment; large mains from Turkey Creek station to the distributing system in Kansas City; distribution pipes or mains located throughout the city; storage reservoirs and hydrants.

On account of the great increase of the population of the city and the resulting increase in the demand for water and on account of the deterioration and wearing out of parts of the system by use, there is an immediate and urgent need for new works for said system and for the making of extensions, enlargements, repairs, improvements and betterments to the system. Unless the proceeds of the bonds are made immediately available for this purpose the welfare, safety and health of the inhabitants of Kansas City will be endangered, and property within the city will be without adequate fire protection.

On October 19, 1923, petitioner filed in this court its petition, duly verified by Frank H. Cromwell, Mayor of Kansas City, Missouri, asking this court to issue its writ of mandamus requiring John T. Smith, Comptroller of Kansas City, respondent herein, to prepare and sell said $100,000 of said waterworks bonds, fourth issue.

On October 19, 1923, respondent entered his appearance in this cause, and waiving the issuing of an alternative writ agreed to plead to the petition.

On November 1, 1923, respondent filed his return to the petition filed herein.

On November 2, 1923, relator filed in this court its motion for judgment on the pleadings.

I. Counsel for respondent first insists that said amendments, No. 1, seeking to repeal Article No. II, and

No. 2, seeking to repeal Section No. 31 of Article XVIII,
and to re-enact certain other articles and sec-
**Void
Amendments.** tions in lieu thereof, are void and of no force
or effect, because the publication of the no-
tice of the election to vote on said amendments was in-
sufficient. In our opinion this insistence is well founded.

In the case of State ex rel. Callaghan v. Maitland, 296
Mo. 338, we held that said Amendment No. 1 was null and
void because the publication of the notice of the election
to vote on said amendment was insufficient, and the record
discloses that Amendment No. 2 was advertised in the
same way and was voted upon at the same time that No. 1
was voted upon; consequently, if No. 1 is invalid for want
of insufficient notice, then No. 2 must be held invalid for
the same reason, which we hold is void.

II. It is next insisted that since the water commis-
sion attempted to be created by said Amendment No. 1
was an illegal body, therefore its resolu-
**Resolution.
Valid** tion recited in Ordinance No. 41964 submitting
its reasons for ordering the bond issue, and
election to vote thereon, is void also, and therefore the
entire ordinance was void. In my opinion there is no
merit in this insistence, for the reason the Charter no-
where requires the Common Council of Kansas City to
enact an ordinance to give its reason for ordering the
improvements, or for issuing the bonds to pay therefor.

III. The pivotal point upon which this case turns
is Section 31 of Article XVIII of the Charter of Kansas
City for the year 1908. That section provides, among
other things, that: the Common Council of
**Valid Charter
Provisions.** Kansas City may by ordinance, from time to
time, submit to the qualified voters of Kan-
sas City, at any general or special election held, a proposi-
tion that the city issue bonds to an amount not exceed-
ing the constitutional limit, and the proceeds shall be ap-
plied "to the making of extensions, enlargements, im-
provements or betterments of the waterworks." These
terms do not include the construction of a new water-

works system, but the terms relate to "making extensions," enlargements, improvements or betterments of the then existing system of waterworks.

Counsel for the petitioner contends that this section confers ample authority upon the city through the Common Council by ordinance to authorize the issuance and sale of the bonds in question in these proceedings, while counsel for the respondent upon the other hand insists that said section grants no authority to the Board of Fire and Water Commission of Kansas City to issue bonds for the acquisition by purchase or for the construction of *new* waterworks.

Counsel for respondent seems to stress and make special objection to the words "new waterworks," thereby intimating that the city was going to purchase or construct *new waterworks*.

This intimation or contention is predicated, as I understand it, upon the fact that the Common Council recited in Ordinance No. 41964 a resolution of the Water Commission stating that in its judgment a bond issue of $11,000,000 was required for waterworks, etc., heretofore copied in full. There is nothing said in said resolution or proposal about purchasing or constructing *new waterworks*. Besides, we have previously held that said resolution or proposal was void and of no force or effect. That being true, if cuts no figure whatever in this case, and may be put aside.

Said Ordinance No. 41964 further provided that the city should submit to the qualified voters of the city a proposal to borrow money and issue its general negotiable bonds in the sum of $11,000,000 for the purpose set out in said proposal. The mere fact that said proposal was invalid and held to be of no force or effect, yet the words and language thereof were copied in the ordinance, and the ordinance which was valid and binding, did not prevent the Common Council from referring, in the ordinance, to those words and that language as expressing its object and purpose in ordering the bonds issued. Un-

questionably the council could have repeated the same words and language of the resolution in the ordinance, as the expression of its own purposes; then why could it not for the sake of brevity adopt the language of the first commission, contained in the resolution, instead of repeating it to express the same purpose as its own? I respectfully submit that there is no valid reason to prevent the council from so doing.

Said ordinance further provided that said bonds should bear interest at a rate not exceeding six per cent per annum, payable semi-annually, and should be in such sums, issued, dated and sold in such manner, at such time or times, and in one or more issues as might thereafter be duly provided. It also provided that the city should before or at the time of issuing the bonds provide for the collection of an annual tax sufficient to pay the interest on the bonds as they fell due and also to constitute a sinking fund for the payment of the principal at maturity.

Ordinance No. 41965 called for an election to be held on April 4, 1922, to submit the bond proposal to the voters. Notice of this election was duly published as required by law and all the requirements relating to the election were duly complied with. The proposal carried by more than the required number of votes.

Ordinance No. 42761 declared the result of the election, and which prescribed substantially the form and title of the bonds, and provided that negotiable bonds of the city authorized by the proposal should be issued in the amount of $11,000,000, to be called waterworks bonds, fourth issue; that the interest on the bonds should be at a rate to be fixed by ordinance not exceeding that prescribed by law. It also provided that an annual tax should be levied and collected each year sufficient to pay the interest on the bonds as it fell due, and finally it provided that the Comptroller was authorized to cause the form of the bonds to be duly prepared, as the same should be ordered sold by ordinance.

Ordinance No. 46389 directed the Comptroller to prepare $100,000 of said waterworks bonds for the issue, and

fixed the rate of interest they should bear at four and one-fourth per cent per annum, payable semi-annually.

IV.   Heretofore, I have set out the substance of the charter provision of the city authorizing the issuance of these bonds and at great length the provisions of the ordinances of the city enacted in pursuance thereof, authorizing their issuance, as well as in minute detail the steps taken in holding the election, the canvass of vote and the result reached. The principal objection alleged against the validity of these bonds, made by counsel for respondent, is that the city under these proceedings is trying to purchase or construct *new* waterworks for the city, instead of "making extensions, enlargements, improvements or betterments of the waterworks," as authorized by Section 31 of Article XVIII of the charter before set forth.

New Works.

We are unable to concur in those views. Clearly the language used in the proceedings says nothing about *new* waterworks. Ordinance No. 41964 provides for "acquisition by purchase, construction or otherwise, of waterworks, and extensions, enlargements, replacements, improvements or betterments," but nowhere uses the words "new waterworks."

The quoted language copied from Ordinance No. 41964 should be read in connection with and in the light of the object or purpose the council had in view when it enacted that ordinance, as disclosed by the entire record in the case, namely: that the city had at the time of its passage an extensive system of waterworks, the source of which was the Missouri River, which embraced intakes; purification works and pumping stations, located at Quindaro, Kansas; flow lines therefrom to Turkey Creek pumping station, with pumps and equipment; large mains from Turkey Creek station to the distributing system in Kansas City; distributing pipes or mains located throughout the city, storage reservoirs and hydrants. The record also shows that the fire hydrants were numbered by the thousands and distribution pipes are 600

State ex rel. Kansas City v. Smith.

miles in length and are worth $15,000 per mile. So extensive were they that counsel for respondent in their briefs state new waterworks were not needed, because those existing at the time were ample to supply all of the necessities of the city.

In the light of this record it could not be reasonably said that the city was going to discard this immense water system and either purchase or construct an entirely new waterworks system. Clearly it was the intention of the city "to make extensions, enlargements, improvements or betterments" as was authorized by Section 31 of Article XVIII of the Charter of Kansas City for the year 1908. But counsel for respondent contend that conceding that

Based on Invalid Charter Amendments.

to be true, the city cannot avail itself of that section of the charter because it did not pretend to act under and by virtue of it, but wholly under Amendments No. 1 and No. 2, previously mentioned in the statement of the case.

It must be conceded that the city did undertake to act under and by authority of said amendments, but in our opinion that can avail respondent nothing, for the reason that said Section 31 of Article XVIII of the Charter of 1908 was in full force and effect and fully authorized the city to issue the bonds in question, and that being true, it is wholly immaterial that officers assume to act under another law which was invalid, if in fact the law they did act under was valid.

In Guire v. Board of Commissioners, 100 S. E. (N. C.) 141, the call for the election to vote bonds and the notice thereof provided that the bonds should be issued at a rate not exceeding six per cent. An act of Legislature which increased the rate allowed by the law from five per cent to six per cent was held to be unconstitutional and void. The court held, however, that even though the limit stated in the call and notice of the election was six per cent, yet if the bonds were not in fact sold for more than five per cent, the rate allowed by the law, the bonds would be valid. The court said:

"The people having voted for the issue of bonds at a rate not exceeding six per cent, it was equivalent to a vote for bonds at any less rate, as the greater includes the less."

The court referred to the case of Quincy v. Warfield, 25 Ill. 317-321, where bonds were issued bearing interest at twelve per cent whereas no more than eight per cent was allowed in the statute by which they were authorized. The Illinois court in holding the bonds to be valid at the rate of eight per cent, said:

"In the case of Johnson v. Stark Co., 24 Ill. 75, we recognized the doctrine that in exercising a power, all acts performed in excess of or beyond the power delegated must be rejected as unwarranted; but if, after the rejection of such acts, there has been enough done to show a proper execution of the power, the act will be sustained, irrespective of the acts performed beyond the power delegated."

The court also referred to the rule that surplusage does not violate that which in other respects is valid, and that surplusage is innocuous and must be disregarded.

We are therefore of the opinion that notwithstanding the attempt of the city officers to issue the bonds under said Amendments No. 1 and No. 2, such attempt does not invalidate them, because their validity is sustained by virtue of the authority given to the city by said Section 31 of Article XVIII of the Charter of 1908.

V.    Counsel for respondent next insist that the bonds are invalid for the reason that Section 10 of Amendment No. 1 previously mentioned provides that the interest on them should be paid out of the revenues derived from the waterworks, and that since said amendment is invalid, there is no legal provision made for paying the interest.    In our opinion this insistence is unavailable for the reason that Ordinance No. 41964 expressly provides that the city should before or at the time of issuing the bonds provide for the collection of an annual tax sufficient to pay the interest on the bonds and

*Interest.*

to create a sinking fund for the payment of the principal at its maturity, and Ordinance No. 42761 provided that an annual tax should be levied and collected each year, sufficient to pay the interest on the bonds as it falls due. This point is ruled against the respondent.

VI.    It is also insisted by counsel that the bonds are invalid for the reason that said Amendment No. 2 provided that the bonds voted should bear interest not to exceed six per cent and that this amendment being invalid there was no legal submission to the voters of the rate of interest the bonds were to bear.   There is no merit in this contention, for the reason that the ordinance submitting the proposal made the same provision, which was valid, and the existing charter provision before mentioned provided that the rate of interest should not exceed five per cent, which was finally reduced by ordinance to four and one-fourth per cent which brings the interest squarely within the limits of the charter and ordinances of the city.

Rate of Interest.

VII.    The final contention made by counsel for respondent is that the bond proposal submitted contained two or more separate, distinct and independent propositions or measures, as a single question for the voters to vote upon.   Much of the argument directed to this contention is devoted to said Amendments No. 1 and No. 2, but since we have held them both invalid, we will devote no more time to them or the argument advanced tending to show their invalidity.

Double Proposition.

The question of doubleness involved in this contention must turn upon the proper construction to be given to Section 31 of Article XVIII of the Charter of Kansas City for the year 1908, the validity of which cannot be questioned.   That section first grants the city the power to issue bonds for sewers, parks, hospitals, waterworks, etc., and a general provision that bonds may be issued for any other public improvements or purposes of any kind whatsoever; consequently, as previously stated, it cannot be contended that the city has not the power to

issue the bonds. That being true, then the only remaining question is as to the mode in which the proposal for voting the bonds was submitted to the voters. The same section of the charter also requires that the council in submitting the bond proposition to the voters shall expressly specify the amount of the bonds to be issued for each particular purpose. The language of the section following said requirement reads thus: "And provided further, that within the meaning of the proviso next immediately preceding . . . the making of extensions, enlargements, improvements and betterments of the waterworks and the payment for land and the right-of-way acquired by purchase or condemnation, or both, within or without the limits of the city, and within or without the limits of the State, for waterworks, or any one or more of said objects, shall be deemed one particular purpose." This charter provision within and for itself declares that any and all of the matters and things authorized thereby are declared to be *one particular purpose,* thereby showing that the people of the city when they adopted the charter, treated those matters as germane and incidental to each other,. and in doing so we think they acted wisely.

But independent of the language of this charter provision, the cases of Hart v. Board of Directors of Nevada School District, 299 Mo. 36, and Willis v. School District of Sedalia, 299 Mo. 446, have so recently, fully and ably discussed and finally passed upon similar questions, that nothing now remains to be said by me upon this subject, except to state that they are in point and conclusively dispose of this contention against the respondents.

We are therefore of the opinion that the alternative writ heretofore issued should be made permanent and it is so ordered. *Graves, Ragland, Walker, White* and *James T. Blair, JJ.,* concur; *David E. Blair, J.,* concurs in the result and in all the opinion except paragraph I.

Headnotes 1 to 7: Municipal Corporations: 1, 28 Cyc. 243; 2, 28 Cyc. 998, 1585 (1926 Anno); 3, 28 Cyc. 1589 (1926 Anno); 4, 28 Cyc. 1576 (1926 Anno); 5 and 6, 28 Cyc. 1593 (1926 Anno); 7, 28 Cyc. 1590.