## STEVENS v. PALMOUR. (No. 170.)

(Court of Civil Appeals of Texas. Waco.
March 5, 1925.)

**1. Action ⬥═⟶36—Plaintiff's pleading held to make action one to remove cloud from title and for recovery of rent.**

Where plaintiff, after formal allegations of trespass to try title, pleaded specially a contract for sale of land by him to defendant, and defendant's breach thereof, and prayed for its cancellation and recovery of rent, action as to plaintiff became a suit to remove cloud from title and for recovery of rents, and, on defendant's cross-bill denying breach and seeking specific performance, action as to him became suit for specific performance.

**2. Specific performance ⬥═⟶1—Final object of specific performance is attainment of exact and complete justice between parties.**

The remedy of specific performance is to compel one violating his primary duty to do very acts which his duty and other party's primary rights, required of him, such as performance of contract according to its terms; foundation of action being that more complete justice is thereby attained than by giving damages.

**3. Specific performance ⬥═⟶51—Contract will be specifically enforced when in writing, certain and fair in its terms, and capable of being fairly enforced.**

Where a contract is in writing, is certain, fair, and just in its terms, and capable of being fairly enforced, it is a matter for enforcement in court of equity.

**4. Specific performance ⬥═⟶28(1) — Absolute certainty as to terms not required, but reasonable certainty sufficient, which may be aided by parol proof.**

To specifically enforce a contract, absolute certainty as to terms is not required, but reasonable certainty as to subject-matter and purpose is sufficient, which certainty may be aided by parol proof.

**5. Specific performance ⬥═⟶28(1)—When contract is certain and definite in its terms stated.**

A contract is certain and definite in its terms, if it leaves no reasonable doubt as to intention of parties and of specific thing equity is called upon to have performed.

**6. Evidence ⬥═⟶450(8) — Parol evidence held admissible to show when vendor's lien notes under contract sought to be enforced were to fall due.**

Where contract of sale of land, sought to be specifically enforced, did not provide when vendor's lien notes were to fall due, parol evidence in that particular would be admissible, on sufficient pleading as basis therefor.

**7. Bills and notes ⬥═⟶125—Presumption that interest was to begin to run from date of notes.**

Where contract for sale of land did not specify from what date vendor's lien notes were to bear interest, court may presume that interest was to begin to run from date of notes.

**8. Specific performance ⬥═⟶114(1)—Pleading of first contract in entirety which was referred to in second contract sought to be specifically enforced held unnecessary.**

Where contract for sale of land, which defendants sought to have specifically enforced, contained reference to a former contract, only purpose of which was to evidence an agreement that defendant was to have interest paid on notes of first contract credited on purchase price of second contract, it was not necessary for defendant to plead original contract in its entirety.

**9. Contracts ⬥═⟶143—Courts cannot make or modify contract but only enforce it as made.**

Court of equity cannot make contracts for parties or modify or change them, but only enforce it as made, provided all its terms can be specifically ascertained.

**10. Specific performance ⬥═⟶126(1)—Judgment of specific performance of contract for sale of land not upheld where it would permit vendee to occupy and enjoy land without paying interest or purchase price or rent.**

Judgment granting vendee specific performance of contract for sale of land, which directed that vendor's lien notes should bear same date as contract to be executed by vendor, and, if upheld, three years would have passed before such judgment will become final, *held* inequitable to vendor, as permitting vendee to occupy and enjoy land without paying interest on purchase price or rent.

**11. Specific performance ⬥═⟶65—Contract for sale of land held not capable of specific performance if cash payment could only be made by vendee cashing first vendor's lien note.**

Where terms of contract for sale of land contemplated that purchaser was to sell first lien note to another and make cash payment from proceeds, and vendor could withhold delivery of deed until note was cashed and proceeds given him, contract cannot be specifically enforced unless cash payment can be made by purchaser, without procuring loan on lien note; the payment and delivery of deed being interdependent.

**12. Specific performance ⬥═⟶12—Not decreed when decree unenforceable.**

Specific performance of a contract will not be decreed when decree cannot be enforced.

**13. Trial ⬥═⟶356(7)—Failure to require jury to answer all special issues not error where answers not required, either because of court's instruction or manner in which issues framed.**

Failure of trial court to require jury to answer all special issues was not error, where answers to some were not required if others were answered, and manner of framing others rendered answers unnecessary.

**14. Specific performance ⬥═⟶97(3)—Condition precedent to granting vendee's specific performance of contract for sale of land stated.**

Purchaser, seeking specific performance of contract for sale of land, will be granted relief only if he can fix with reasonable certainty

'date intended to be given vendor's lien notes, and by depositing amount required by contract to be paid by him, together with interest on cash payment and on notes from date it was contemplated that contract would be closed.

Error from District Court, Limestone County; J. Ross Bell, Judge.

Action by J. B. Stevens against A. B. Palmour, in which defendant filed cross-bill praying for specific performance. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

·G. A. Walters, of Mexia, for plaintiff in error.

Ben F. Cone, of Mexia, for defendant in error.

### Statement of Case.

STANFORD, J. This suit having been brought by plaintiff in error against the defendant in error, the parties herein will be referred to as they were in the trial court. On August 14, 1920, J. L. Stevens, a son of plaintiff, sold to defendant the land herein involved for $18,500, $1,000 cash paid, and fifteen vendor lien notes executed by defendant, of even date with said deed, payable to the order of J. B. Stevens, as follows: $4,000 due on or before January 4, 1921, and thirteen notes for $1,000, each falling due one each year, beginning January 1, 1922, and continuing to January 1, 1934, respectively, and one for $500 due January 1, 1935; all of said notes bearing 8 per cent. interest from January 1, 1921, to maturity, and 10 per cent. after maturity, and containing the usual attorney's fee and accelerated maturity clause.

J. L. Stevens died February 24, 1921, leaving a will, in which he bequeathed to his father, plaintiff herein, all of said vendor lien notes. This will was duly probated. Some time prior to January 1, 1923, plaintiff and defendant agreed that plaintiff should foreclose on the above-described notes and get the title to said land clear in himself, and then sell it to defendant; plaintiff claiming he was to sell it to defendant for such price as might be agreed upon, and defendant claiming plaintiff was to sell it to him by contract of the same tenor and effect as the one he then had with J. L. Stevens, deceased, and that plaintiff agreed to allow him credit for all sums paid to J. L. Stevens, etc. Under said agreement, plaintiff did sue on all of said notes, recovered judgment against defendant for $18,490 and a foreclosure of the vendor's lien on said land against defendant and his wife. The land was sold under order of sale, bought in by plaintiff for $9,-375, which, less court costs, was credited on said judgment, and said land duly conveyed by sheriff's deed to plaintiff. At this point a controversy arose between plaintiff and defendant as to the terms on which said land should be sold to defendant, and this matter was submitted to arbitrators, who succeeded

in settling the matter by inducing the parties to execute the following contract:

"The State of Texas, County of Limestone.

"This agreement made and entered into by and between J. B. Stevens, hereinafter called party of the first part, and A. B. Palmour, hereinafter called party of the second part, shows:

"Party of the first part agrees to sell to party of the second part about one hundred and eighty-five acres of land and being the same land conveyed to party of the second part by J. L. Stevens during his lifetime, a part of the Wingate Survey in Limestone county, Texas, upon the following terms and conditions, to wit:

"Party of the first part will furnish party of the second part a deed to said land and an abstract that will be passed on by the loan company as a good abstract and deed within thirty days from the date hereof, and the loan company is to have thirty days after the abstract is delivered to party of second part in which to examine the same and, should any objection be found to said abstract, party of the first part is to have a reasonable time in which to cure said objection and when said objections are cured and said abstract is accepted by the loan company which the loan company must pass upon within five days from the time the abstract is delivered to party of the second part.

"Party of the second part agrees to pay party of the first part seventeen thousand five hundred dollars upon the following terms and conditions: Ten thousand dollars cash, and fifteen vendor's lien notes, each in the sum of five hundred dollars and bearing eight per cent. interest, which notes are to be a second vendor's lien upon said land, that is, party of the second part is to carry out and fulfill the original contract and agreement purchasing this land from J. L. Stevens, deceased, less four hundred dollars interest. Party of the second part agrees to forfeit to party of the first part the rent for said land for the year 1922, that is, he is to pay rent for said land for said year 1922 in case he fails to comply with the terms of this agreement.

"Party of the first part agrees to forfeit to party of the second part the rent for said land for the year 1922 in case he fails to comply with the terms of this agreement, that is, if it is possible for him to furnish an abstract of title acceptable to the loan company, but in case he cannot do so, then this agreement is to be null and void as to both parties and party of the second part is to pay party of the first part rent for said land for the years 1922 and 1923.

"Witness our signatures, this the 1st day of January, A. D. 1923, in duplicate.

"J. B. Stevens,
"Party of the First Part.
"A. B. Palmour,
"Party of the Second Part.
"Signed in the presence of
"Osborne Kennedy, Jr.
"Jim Brooks."

Plaintiff brought his suit in the form of trespass to try title, and also pleaded the above contract of purchase by defendant, setting out in detail the sale to defendant by J. L. Stevens, August 14, 1920, and that de-

fendant had been in possession since said date, and all matters leading up to the execution of the contract of January 1, 1923, and that defendant had failed to comply with said contract, a copy of which he attached to and made a part of his petition for all purposes, and asked that same be canceled as a cloud on his title, and that he recover rents for 1922 and 1923 in the sum of $2,000. Defendant, among other things, in a cross-bill pleaded the contract of January 1, 1923, and that plaintiff had failed to carry out the terms of said contract, attached said contract to his cross-bill, and prayed for specific performance, etc. The court submitted the case to the jury on the following special issues:

"Special Issue No. 1. After the abstract had been passed upon and returned by the San Antonio Joint-Stock Land Bank, and at or prior to the time plaintiff refused to return the abstract, perfected, to defendant, did A. B. Palmour notify J. B. Stevens that he (Palmour) was unable to comply with the contract to purchase the land unless J. B. Stevens would reduce the cash payment to be made to less than $10,000?" To which the jury answered: "No."

"If you answer special issue No. 1 in the affirmative, then answer the following special issue No. 2:

"Special Issue No. 2. What was the value of one-third of the grain and hay and one-fourth of the cotton and cottonseed grown by A. B. Palmour on the land in question in the year 1922?" No answer.

"Special Issue No. 3. What was the value of one-third of the grain and hay and one-fourth of the cotton grown on the land in question in the present year, 1923?" No answer.

"In case you answer special issue No. 1 in the negative, you need not answer special issues Nos. 2 and 3."

At the request of plaintiff, the court also gave the following special issues:

"No. 1. At or about what time did the plaintiff, J. B. Stevens, refuse to return the abstract showing perfected title to the defendant A. B. Palmour for examination by the loan company?" To which the jury answered: "Don't know."

"No. 2. If in answer to special issue No. 1 submitted by plaintiff you have stated about the time that the plaintiff, J. B. Stevens, refused to return to defendant, A. B. Palmour, the abstract, supplemented, showing perfected title, then you will answer this question: Was the defendant, A. B. Palmour, able and provided with the money to pay the plaintiff, J. B. Stevens, over and above the amount awarded him by the loan company to make the $10,000 cash payment contracted to pay at the time plaintiff refused to return the abstract, perfected?" This was not answered.

"No. 3. If you have stated the time, or about the time, plaintiff, J. B. Stevens, refused to return to defendant, A. B. Palmour, the abstract showing perfected title, then you will answer the following question: Did the defendant, A. B. Palmour, notify the plaintiff, J. B. Stevens, at or prior to the time that the plaintiff refused to return the abstract, perfected, to defendant, A. B. Palmour, that the defendant, A. B. Palmour, was unable to furnish enough cash to make the $10,000 cash payment contracted by him?" This issue was not answered.

The court rendered judgment, denying the relief asked by plaintiff, and decreed specific performance of the contract of date January 1, 1923, in favor of defendant on his cross bill.

## Opinion.

[1] The plaintiff, after his formal allegations of trespass to try title, having pleaded specially the contract of January 1, 1923, for the sale of the land by him to defendant, and defendant's breach of said contract, for its cancellation, and for the recovery of rents, etc., said cause as to plaintiff became a suit to remove cloud from title and for the recovery of rents. Rivers v Foote, 11 Tex. 662; Turner v. Ferguson, 39 Tex. 508; Custard v. Musgrove, 47 Tex. 219; Railway v. Whitaker, 68 Tex. 630, 5 S. W. 448. The defendant pleaded the same contract of sale, denied he had breached same, but alleged plaintiff had breached said contract, and sought specific performance of said contract against plaintiff. So the suit as to defendant on his cross-bill became one for specific performance.

[2-5] The remedy of specific performance is one well established in courts of equity. It is a remedy given to compel a party violating his primary duty to do the very acts which his duty and the other party's primary right required of him, such as the performance of a contract according to its terms and requirements. The foundation of the action is that, by compelling the parties to a contract to do the very things they have agreed to do, more complete and perfect justice is attained than by giving damages for a breach of the contract. The end in view should be, primarily, the protection of the plaintiff, but the equities of the defendant must also be protected; the supreme object being the attainment of exact and complete justice between the parties. Pomeroy Eq. Juris. § 1401. Where a contract is in writing, is certain in its terms, is fair and just in its provisions, and capable of being enforced with fairness to both parties, it is a matter for enforcement in a court of equity. Wilson v. Beaty (Tex. Civ. App.) 211 S. W. 526; Pomeroy Eq. Juris. § 1401. Absolute and positive certainty as to the terms of a contract is not required, but there must be reasonable certainty as to the subject-matter, the stipulations, the purposes, and the circumstances under which the contract was made. The certainty of the contract may be aided by parol proof of such extrinsic facts as may lawfully be used for such purpose. Stanton v. Miller, 58 N. Y. 192. The contract is certain and definite in its terms, if it

leaves no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed. Ward v. Stuart, 62 Tex. 335; Munk v. Weidner, 9 Tex. Civ. App. 491, 29 S. W. 409.

[6] The contract here involved was dated January 1, 1923. It is clear as to the land agreed to be deeded to the defendant. It is clear that defendant was to pay plaintiff $17,500 for said land, $10,000 cash, and fifteen vendor's lien notes for $500 each, same to be a second lien on said land.. It is clear that plaintiff was, within 30 days from the date of said contract, to furnish defendant an abstract to said land, and that defendant would, within 30 days, procure the opinion of a loan company on the title, and if objections were found, plaintiff would cause same to be cured in a reasonable time, and that the loan company would then accept said title, if at all, in 5 days. It is reasonably clear from the entire contract that the parties intended, in addition to the fifteen $500 second lien notes, that defendant would also execute one vendor·lien note for $10,000, making it a first lien on said land, and that defendant would procure a loan company to take up this note, and in this way raise the $10,000 cash payment. It is clear that all notes were to bear 8 per cent. interest. The contract does not provide when the second lien notes shall fall due, but it would be permissible to supplement the written contract by parol evidence in this particular, on sufficient pleading as a basis for such evidence. Wilson v. Beaty (Tex. Civ. App.) 211 S. W. 527; Luzader v. Richmond, 128 Ind. 344, 27 N. E. 736; Gates v. Gamble, 53 Mich. 181, 18 N. W. 631; Shumway v. Kitzman, 28 S. D. 577, 134 N. W. 325; Zimmerman v. Rhoads, 226 Pa. 174, 75 A. 207.

The contract does not provide for a $10,-000 first lien note, but, as above suggested, evidently this was the intention of the parties, and that it should be sold to a loan company by defendant to procure the $10,000 cash payment. It would be permissible to show this by parol, provided there was pleading as a basis. However, in view of the disposition we make of the case, this becomes unimportant.

[7] The contract does not specify from what date the notes are to bear interest, but we are authorized by law to presume that interest was to begin to run from the date of the notes. Smith v. Goodlett, 92 Tenn. 230, 21 S. W. 106; Miller v. Cavanaugh, 99 Ky. 377, 35 S. W. 920, 59 Am. St. Rep. 463; Daniel Negotiable Instruments, § 1458.

[8] Plaintiff contends that, as the contract declared upon by defendant refers to the contract that defendant had made with J. L. Stevens, said first contract became a part of the one dated January 1, 1923, and that, as the terms of said first contract are not plead,

the contract of January 1, 1923, cannot be specifically enforced, etc. The contract herein sought to be enforced by defendant, after reciting that defendant Palmour is to pay $17,500 for the land, $10,000 cash and fifteen notes for $500 each, contains this clause:

"That is, party of the second part is to carry out and fulfill the original contract and agreement purchasing this land from J. L. Stevens, deceased, less $400.00 interest."

It is to be borne in mind that at the time this contract of January 1, 1923, was executed the J. L. Stevens notes, by agreement, had been reduced to judgment, the land sold by virtue of an order of sale, and the land bought in by J. B. Stevens. It is also to be borne in mind that defendant bought from J. L. Stevens for $18,500, and paid $1,000 cash, leaving a balance of $17,500 principal under the J. L. Stevens purchase, and that he had paid $400 on interest. Also, that while the principal amount of the purchase price stated in the contract of January 1, 1923, is the same as the balance of the price under the J. L. Stevens purchase, being $17,-500 in each, yet the notes are entirely different in amount. The contract sued on very clearly recites the purchase price is to be $17,500 and how same is to be paid. We think it is very clear that the only purpose of the clause referred to in the contract of January 1, 1923, was to evidence an agreement that defendant was to have the $400 he paid on interest on the J. L. Stevens notes credited on the $17,500. This is the view the trial court took of this matter, and seems to have been the understanding of plaintiff, as shown by his pleading in reply to defendant's cross-bill, in which he says that "defendant was to pay plaintiff the sum of $17,-500, less $400 that defendant had paid as interest on the vendor. lien notes theretofore executed to J. L. Stevens, as aforesaid, etc.". The trial court properly construed the above clause referring to the original contract. It was not necessary for defendant to plead the original contract in its entirety, but only the meaning and import of the above clause referring to said original contract, and to support such pleading by evidence.

[9] Under other assignments, plaintiff claims the contract is unenforceable, because it does not specify the date agreed upon that should be given to the deed and notes provided for by the contract of January 1, 1923. If this deed and the notes were intended to be dated the same date as the contract herein sought to be enforced, January 1, 1923, or about the time the parties contemplated the deal would be closed, as indicated by the provisions of the contract, say about March 1, 1923, then the deed and all notes, the $10,-000 first lien note as well as the fifteen $500 second lien notes, would have to be given such date, for a court of equity has no authority to make contracts for the parties or

to modify or change the contract in any particular, but only to enforce the contract as made by them, provided all its terms can be clearly ascertained.

[10] The judgment herein directing specific performance was rendered December 28, 1923, nearly a year after the contract of sale was executed, and it is now more than two years since said contract was executed, and, if we were to affirm this judgment, probably three years would have passed before this judgment would become final. The trial court directs in the judgment that the notes shall bear the same date as deed to be executed by plaintiff, and we presume the court intended the deed should be dated the date it is actually executed. But this would be unjust and inequitable to plaintiff, J. B. Stevens. A court of equity should not permit defendant to occupy and enjoy the land without paying either interest on the purchase price or rents. If the court could enforce the contract and require all of the notes to be executed as contemplated by the contract, then the court would have to ascertain the date which the parties contemplated should be given to the deed and notes, and direct that they be given such date, and require defendant to pay the accrued interest on all of said second lien notes at 8 per cent. and on the $10,000 described as a cash payment in the contract, at 6 per cent. from said date up to the time the sale and purchase is actually consummated, and, in addition thereto, pay all notes that might be due at said date.

[11, 12] If the contract had provided that the $10,000 first lien note should be made payable to the order of J. B. Stevens, and he had assumed the burden of negotiating it, the matter would have been greatly simplified, but the burden of selling this note to a loan company being upon defendant Palmour, and Stevens being the real beneficial owner of said note, and having the right to withhold delivery of the deed until the note is cashed and the $10,000 paid him, the closing of the two deals, the sale of the land, and the closing of the loan were interdependent, the one upon the other. This being true, and the court being powerless to compel any loan to be made or procured by defendant, and also being powerless to compel the plaintiff, J. B. Stevens, to execute any deed or to furnish any abstract to said land or to cure any defects that might be found in said abstract, said contract is incapable of being specifically enforced if the $10,000 cash payment cannot be made by defendant except by procuring a loan company to take up a $10,000 first lien note on the land in controversy. Specific performance of a contract will not be decreed when the decree cannot be enforced. Webb et al. v. Durrett (Tex. Civ. App.) 136 S. W. 1189; Redwine v. Hudman, 104 Tex. 21, 133 S. W. 428; Whitney Co. v. Smith, 63 Or. 187, 126 P. 1000; Saxon v. White, 21 Okl. 194, 95 P. 783; Cyc. Vol. 36, p. 373.

[13] Under other assignments, plaintiff complains of the action of the court in not requiring all of the special issues to be answered by the jury. As shown in the statement of the case above, the court submitted to the jury three special issues, but, as the jury answered special issue No. 1 in the negative, under the instructions of the court they were not required to answer the other two. Also, at the request of plaintiff, the court submitted three special issues. The first of these required the jury to find "at or about what time did the plaintiff refuse to return the abstract showing perfected title, etc?" The jury answered this, "Don't know;" and, the way the other two specially requested issues are framed, they called for an answer only in the event the jury had found the time called for by the first specially requested issue. So it was not necessary for the jury to answer the last two specially requested issues, and, the answer to the first being wholly immaterial, no error is shown.

[14] By his nineteenth and twentieth assignments plaintiff complains of the judgment rendered, in that same does not finally dispose of the controversy between the parties, and does not properly protect the interests of the plaintiff, and does not direct specific performance of the contract as actually made by the parties. We think the judgment of the court is subject to the criticisms contained in these two assignments. As pointed out above, the amount of the purchase money should bear interest from the date the parties contemplated that the deal would be closed—$10,000 of said amount at the rate of 6 per cent. per annum, and $7,500 of said amount at the rate of 8 per cent. per annum. We think, upon another trial, if defendant by proper pleading and evidence can fix, with reasonable certainty, the date which was intended to be given said notes, and if defendant further tenders performance of his part of said contract by depositing in the registry of the court the amount of money required under the terms of the contract to be paid by him, including, not only the $10,000 cash, but 6 per cent. interest on same from the date it was contemplated said deal would be closed, and 8 per cent. interest on the $7,500 from said date, also any of the $500 second lien notes that would, according to the terms of said contract, be due on the date of the trial of this case, and in case the jury should find that plaintiff breached said contract of January 1, 1923, on or about the time alleged in defendant's cross-bill, then the court should decree specific performance, by the judgment of the court divesting title out of plaintiff to the land in controversy herein and vesting the title to same in the defendant, subject to any of the purchase money represented by the

$500 notes that may still remain unpaid or not included in the deposit made in the registry of the court, and by appropriate recitations in the decree, fixing and reserving the vendor's lien to secure the payment of said unpaid part of the purchase money in installments of $500 per annum, as per the contract, bearing 8 per cent. interest from the date of said decree; defendant's pleadings being amended·to authorize, all of the above matters. But, if defendant fails to make the tender and deposit in the registry of the court, as above indicated, then the court should refuse specific performance, and the parties should be left to their remedy for damages for breach of contract, provided the pleadings support such relief, and the adjustment of equities between the parties as to rents, etc.

We sustain in part plaintiff's second, sixth, sixteenth, ninteenth, and twentieth assignments of error, and reverse and remand this case, for another trial.