HARRY J. MEYERING, Appellant, v. VICTOR J. MILLER, Mayor of the City of St. Louis; LOUIS NOLTE, Comptroller of the City of St. Louis; WILLIAM BUECHNER, Treasurer of the City of St. Louis; EDMUND R. KINSEY, President of the Board of Public Service of the City of St. Louis, and the CITY OF ST. LOUIS.—51 S. W. (2d) 65.

Division One, June 13, 1932.

*Frank C. O'Malley* for appellant.

*Julius T. Muench* and *Oliver Senti* for respondents.

HYDE, C.—This is an action by appellant, a resident taxpayer of the city of St. Louis, to enjoin the city and its officers from using the proceeds of bonds for the erection of a hospital and the acquisition of land therefor by condemnation. Nothing is before us except the pleadings, appellant having demurred to respondents' joint answer and return to the petition and to the order to show cause why a temporary injunction should not be issued. The court overruled the demurrer and appellant declined to plead further. The court, thereupon, entered judgment dismissing appellant's bill and he has appealed therefrom.

The question here is the construction of the ordinance, which submitted the bond issue to the voters of the city and set forth the purposes for which the proceeds of the bonds should be used. The part of the ordinance involved herein is as follows:

"Proposition Twelve—For the acquisition of land and the construction of additions to and extensions and equipment of public hospitals and institutions for the care of delinquents and the indigent tubercular, insane, feeble-minded, infirm, and sick patients, four million, five hundred thousand dollars ($4,500,000)."

The official ballot provided for was as follows:

"Proposition Twelve—For the acquisition of land and the construction of additions and extensions and equipment of public hospitals and institutions for the care of delinquents and the indigent tubercular, insane, feeble-minded, infirm and sick patients, four million, five hundred thousand dollars ($4,500,000).

"For increase of debt, Proposition Twelve, YES.

"For increase of debt, Proposition Twelve, NO.

(Scratch one of the above.)"

Appellant's petition sets out that the city of St. Louis maintained two city hospitals, one of which was maintained for the care of negroes; that the city proposes to erect a new hospital for negroes upon a location more than four miles from either of the present hospitals; and that it has commenced suit for condemnation of land at such location for this purpose. The petition further alleges that this will be a misappropriation and misapplication of the funds voted at the bond election; that the cost of building and operating a new hospital will be much greater than if the same were built as an addition to either of the present hospitals; and that this is a damage

to plaintiff and each and every taxpayer. Respondents' answer and return admits the enactment of the various ordinances mentioned in the petition; and that the erection, and equipment, and the operating expenses of the proposed hospital will cost, the extra amounts specified in the petition, more than if it was built as an addition to one of the city's existing hospitals. The answer also stated that the separate projects submitted were not itemized in detail but that a Special Committee of the Board of Aldermen, prior to the passage of the ordinance submitting the bond issue, made an itemized report; that this report was adopted by the Board; that printed copies of this report were widely circulated among the electors of the city prior to the election; and that it was given great publicity by speakers, civic organizations and newspapers. The part of this report which dealt with Proposition Twelve was as follows:

"Proposition Twelve—For the acquisition of land and the construction of additions to and extensions and equipment of public hospitals and institutions for the care of delinquents and the indigent tubercular, insane, feeble-minded, infirm and sick patients, $4,500,000.

"Itemized Detail.

| Additions and extensions to and enlargement of | |
|---|---|
| Koch Hospital | $ 500,000 |
| Additions to and enlargement of City Hospital | 1,000,000 |
| New Hospital for colored people | 1,200,000 |
| Additions and extensions at City Sanitarium | 760,000 |
| Additional isolation building or buildings | 250,000 |
| New Morgue | 140,000 |
| Manual Training School at Bellefontaine Farm for boys | 50,000 |
| Buildings at Farm for delinquent girls | 100,000 |
| Enlargement of and addition and extensions at the Farm for the Feeble-minded | 500,000 |
| Total | $4,500,000" |

The answer, also, sets up other facts, concerning the hospitals and institutions maintained by the city, and such as are deemed material will be mentioned later in the opinion.

Appellant's contention is that the proposition, set out in the ordinance and on the ballot, only authorizes additions or extensions increasing the size of the existing individual hospitals and institutions referred to and the acquisition of land for that purpose; and that it does not authorize the building of a new hospital, on a new location, separate and apart from any existing hospital. Respondents, on the other hand, contend that the proposition refers to *the system of* public hospitals and institutions, maintained by

the city, and that it contemplates, not only additions to the buildings and institutions then existing, but also extensions of the system of public hospitals and other institutions by establishing necessary new institutions, located separate and apart from the old ones.

An analysis of Proposition Twelve discloses that it enumerates the following purposes: Acquisition of land (for public hospitals and institutions for the care of delinquents and the indigent tubercular, insane, feeble-minded, infirm and sick patients); *construction of additions to* public hospitals and institutions (above referred to); and *extensions and equipment of* public hospitals and institutions (above referred to). The real question in this case is the meaning of this third purpose, namely: *"Extensions and equipment of* public hospitals and institutions." (For the above purposes.) The words "addition" and "extension" and their synonyms "increase" and "augmentation" are often used interchangeably. It is, however, clear that they were used in this proposition with different intended meanings. The proposition here limits the word "additions," by the words preceding and following it, since it reads *"construction of additions to."* It is not, however, limited to additions to present buildings since the words "hospital and institutions" are used rather than "buildings" at such institutions. The word "addition" implies physical contact; some thing added to another. [1 C. J. 1190.] Unquestionably, by stating in the proposition, the purpose of *"construction of additions to* public hospitals and institutions," the contruction either of additional buildings or additions to buildings at existing public hospitals and institutions so as to increase their capacity, was meant.

It has been said that the word "extension" "is not a word of art, and having no legal or technical significance may mean whatever the parties intended." [25 C. J. 227.] "Extension" is defined by Webster's Dictionary as the act of extending or state of being extended; a stretching out; by the Century Dictionary as a stretching or expanding; and by Funk and Wagnalls Dictionary as a reaching or stretching out as in space, time or scope; prolongation or enlargement. The word "extend," from which it is derived, is defined by Webster's Dictionary as to enlarge in any sense; to make more comprehensive or capacious; to broaden the application or action of. Its synonyms are: increase, enlarge, expand and widen.

All these definitions, however, merely bring us back to the original question. What was the unit intended to be increased, enlarged and expanded? These terms are used in many connections with many different meanings. A corporation may extend its business by building new branches or factories. May not a city extend its hospitals

and institutions of treatment and correction by building others at new locations if that will better serve the city in its increasing requirements and future growth? Do the words used here mean the increase, enlargement and expansion of each existing separate public hospital and other institutions referred to; or do they mean the increase, enlargement and expansion of the whole combination or organization of such hospitals and institutions by adding separate new units thereto? (We purposely avoid using the word system here.) As above pointed out, "*the construction of additions to*" these institutions would provide for the increase, enlargement and expansion of each existing institution or unit of the whole organization. If the further stated purpose, of "*extensions and equipment of*" such institutions, serves any purpose whatever, other than mere repetition, it seems to us that it must be construed to mean the increase, enlargement and expansion, of the whole combination, organization or department of public institutions referred to, by adding separate new units deemed to be necessary.

There are several considerations, other than the mere meaning and use of the words employed, which bring us to this conclusion. This proposition for public hospitals and institutions, referred to, was a part of a vast ten-year improvement plan of the city of St. Louis to provide for the city's future needs and welfare. Twenty-one propositions aggregating $88,372,500 were submitted. All of the special improvements required, for adequate facilities for treatment of the sick and delinquent because of the city's growth or because of advancing medical and scientific knowledge could not well be forecast for such a long period of time. Such a program for the future, necessarily, was stated in general terms so that the specific projects could be determined by future investigation of specific matters and by study of all of the related propositions which the voters approved. The charter of the city of St. Louis authorizes this by Section 3, of Article XVIII, which states:

"It shall not be necessary in the ordinance calling the election, in the notice of election, in the question submitted, or on the ballot, or in any of the matters preceding the said election, to state the amount of bonds proposed to be issued for each purpose, but it shall be sufficient if the ordinance and notice of election state the total amount of bonds proposed to be voted upon at the said election and in general language the purpose or purposes for which such total amount of bonds is to be issued, and if two-thirds of the voters of the city voting at such election assent to the issuance of such amount of bonds, then such amount may be issued and such bonds or the proceeds thereof may from time to time, by ordinance recommended by the board of estimate and apportionment, be appropriated in any amount or

amounts to the purpose or purposes for which such total amount was voted.''

Section 1 of this Article also sets out, among other propositions for which the city is authorized to issue bonds, the following: ''For hospitals, insane asylums, orphan asylums, poor houses, industrial schools, jails, work houses and other charitable, penal and corrective institutions.'' These institutions are classified by Section 14 of Article XIII. Under the division of hospitals is included ''all hospitals, infirmaries, medical laboratories, dispensaries and other charitable institutions of the city,'' and under the division of correction ''all detention, penal, and corrective institutions of the city.'' By this section, they are all placed under the supervision of the ''Department of Public Welfare.'' The charter therefore contemplates a combination or organization of such institutions as one department of the city, and we must consider that the makers of this ordinance. which we are called upon to interpret, had this plan of the charter in mind when they used this language they did in framing it to provide for the future needs of the department supervising these institutions.

Appellant relies upon the case of Meyers v. Kansas City, 323 Mo. 200, 18 S. W. (2d) 900. In that case the proposition submitted to the voters of Kansas City provided for bonds ''for the construction, improvement and equipment of municipal docks and wharves.'' This court held that the city was not thereby authorized to use part of the proceeds for the purchase of land. The court pointed out that, in three other propositions concurrently submitted, where the improvement could not be established without procuring a site, the purchase of the site was provided for; and held that the plain terms of the proposition contemplated the use of the proceeds in question ''not for the acquiring of a site nor for extending the area of same, but to construct, improve, and equip the site then possessed or thereafter acquired and controlled by the city.'' This court also there said: ''If any doubt arises out of the use of the words employed, it is to be resolved in favor of the public and in limiting the expenditures of the appropriation to the express terms for which it was made.''

In the present case the proposition provided for both the acquisition of land and ''extensions and equipment of'' the hospitals and other institutions described. The proposition limits the expeditures to such hospitals and other institutions and they cannot be made for any other kind of institutions. The obligation of the city is that of the custodian of the trust fund which it is bound to see is applied only to the purposes for which it is created. [Thompson v. City of St. Louis, 253 S. W. 969.] This, however, does not answer the ques-

tion of whether the unit to be expanded is each separate existing institution or the whole combination, organization or department.

Respondents rely upon the case of State ex rel. Kansas City v. Smith, 302 Mo. 594, 259 S. W. 1060. The question in that case was the use authorized of funds provided ''for the acquisition by purchase, construction or otherwise, of water works and of extensions, enlargements, replacements, improvements or betterments of the water works.'' The charter of the city authorized the application of the proceeds of bonds ''to the making of extensions, enlargements, improvements or betterments of water works.'' It was contended that including in the proposition ''the acquisition by purchase, construction or otherwise of water works'' rendered the bonds invalid, because it authorized the purchase of the new water works. The court pointed out that at the time the ordinance was passed the city had an extensive system of water works consisting of intake stations, pumping stations, flow lines and distribution pipes 600 miles in length and said: ''In the light of this record, it could not be reasonably said that the city was going to discard this immense water system and either purchase or construct an entirely new waterworks system. Clearly, it was the intention of the city 'to make extensions, enlargements, improvements or betterments' as was authorized by Section 31 of Article 18, of the charter of Kansas City.'' Of course, a waterworks system is a physically connected system and any extension of it necessarily is connected with it and a part of it. Therefore the analogy, attempted to be made by respondents, of the system of hospitals and other institutions maintained by the city of St. Louis, with the Kansas City Water Works system, is not exact. The same thing could be said of a railway system, concerning which there are a variety of decisions depending upon the wording of particular statutes. Therefore, these authorities do not settle the question and we must look to fundamental principles for the answer.

█ The primary rule of construction of statutes or ordinances is to ascertain and give effect to the lawmakers' intent. [2 Lewis' Sutherland on Stat. Const. (2 Ed.) sec. 363.] The rule of strict construction ''has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object.'' [Endlich on Interpretation of Statutes, sec. 329; Maxwell on Statutes (5 Ed.) 425.] The report of the Special Committee of the Board of Aldermen gives some light on their intent. [36 Cyc. 1139.] Strict construction ''does not mean that whenever a controversy is or can be raised

of the meaning of a statute, ambiguity occurs, which immediately and inevitably determines the interpretation of the statute. . . . Its proper office is to help solve ambiguities, not to compel an immediate surrender to them. . . . Will the courts ever be exempt, or have they ever been exempt from that duty? Has skill in the use of language ever been so universal, or will it ever be so universal, as to make indubitably clear the meaning of legislation? Has forecast of events ever been so sure, or will it ever be so sure, as to make inevitably certain all the objects contemplated by a statute? We think not, and there never will be a time in which judicial interpretation of laws will not be invoked, and it cannot be omitted because a doubt may be asserted concerning the meaning of the legislators.'' [Citizens' Bank v. Parker, 192 U. S. 73, 24 S. C. 181, 48 L. Ed. 346.] Likewise, it has been said that strict construction ''is not a precise but a relative term. It is not the exact converse of liberal construction, for it does not consist in giving words the narrowest meaning of which they are susceptible.'' [2 Lewis' Sutherland on Stat. Const. (2 Ed.) sec. 519; Biffer v. City of Chicago, 278 Ill. 562, 116 N. E. 182.] Considering the ordinance here in the light of these principles and the circumstances disclosed by the record, it would seem reasonable that the intent and object of Proposition Twelve, in providing the sum of four and one-half million· dollars for a ten-year plan expansion of hospitals and institutions, for the care of delinquents and indigent patients, to provide for the future needs and growth of the city, was not merely to increase the size and capacity of each separate unit of its present institutions; but that it also contemplated the addition of separate new units if, and when, they were determined necessary for the increase, enlargement or expansion of the service of the whole organization, combination, system, or department of public hospitals and other institutions, referred to, maintained by the city of St. Louis; and we so hold.

■ Appellant further contends that, if the proposition be construed to authorize the erection of new and separate units, as well as increasing the size of existing hospitals and institutions, it would be void as submitting to the voters a double purpose. A very similar contention was made in this court in Willis v. School District of Sedalia, 299 Mo. 446, 253 S. W. 471, in which the proposition submitted was issuing bonds ''for the purpose of purchasing school house sites, erecting school houses and furnishing the same and building additions to and repairing old buildings.'' This court held against that contention, following the case of Hart v. Board of Directors of Nevada School District, 299 Mo. 36, 252 S. W. 441. This court in that case, after an exhaustive review of the authorities, stated the test of doubleness as follows: ''If it can be said that the

894

proposed improvements are not materially related or connected then it is clear that separate submissions are required; if, on the other hand, the several parts of the project are plainly so related that, united, they form in fact but one rounded whole, it is equally clear that they may be grouped together and submitted as one proposition. [See, also, State ex rel. Kansas City v. Smith, 302 Mo. 594, 269 S. W. 1060.] Clearly, there can be no distinction between, submitting together, a proposition for additions to school buildings and construction of new school buildings of the same district, and submitting a proposition authorizing the building of additions to and new units of the public hospitals and other institutions of the city of St. Louis. It would seem that each is a combination or organization of units into a department which formed but one rounded whole, namely: A school system, organization or district, and a system, organization or department of hospitals and other institutions for the treatment of the classes of patients enumerated.

The judgment is therefore affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.